**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **CHARLES W. SULLIVAN,** <br><br> **Defendant.** | **Case No. CA 02-154 ML** |

## THE SEC'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*

The Securities and Exchange Commission ("SEC") hereby opposes Defendant Charles Sullivan's ("Defendant") motion *in limine* ("Motion") to exclude all evidence other than that relating to investment made by Rashed Mohamed Mahran Al Bloushi ("Al Bloushi"). More specifically, the Defendant asks that the Court exclude evidence relating to the SEC's allegations that the Defendant also participated in the schemes to defraud investors Robert Fitzhenry ("Fitzhenry"), Four Star Financial Services, Inc. ("Four Star"), and Bill Britt ("Britt").[1] The Defendant suggests that this evidence is irrelevant because, he asserts, these individuals have been substantially repaid. *See* Defendant's Memorandum in Support of Motion *in Limine*, at 2. Indeed, he states that "Mr. Al Bloushi is the only party left who has not received a return of his funds." *Id.* at 4. The Defendant's position is factually misleading and without legal basis: The investors *have not* all been substantially repaid and even if they had been, these post-scheme payments

[1] The Defendant has also sought to exclude evidence relating to the investment by investor Malcolm Monlezun ("Monlezun"); however, the SEC is not intending to present any evidence with respect to Monlezun's investment. In contrast to the schemes to defraud Fitzhenry, Four Star, and Britt, the SEC is not alleging that the Defendant had a role in the scheme to defraud Mr. Monlezun.

would not invalidate the SEC's claims that the Defendant violated the securities laws. Accordingly, the Defendant's Motion should be denied.

To succeed on its claims that the Defendant aided and abetted violations of the federal securities laws, the SEC needs to establish 1) that a securities law violation was committed; 2) that the Defendant was generally aware of the violation; and 3) that the Defendant rendered substantial assistance to the violation. *See Cleary v. Perfectune, Inc.*, 700 F.2d 774, 777 (1st Cir. 1983), *overruled on other grounds by Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994); *SEC v. Peretz*, 317 F. Supp.2d 58, 63 (D. Mass. 2004); *see also SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996). As the SEC stated in its initial Motion *in Limine*, the fact that the Defendant or others may have made payments to victims *after the violations were committed* has no bearing on the issue of whether violations were committed in the first place. This is an SEC enforcement action for civil injunctions and other equitable remedies; it is not a private action for damages that can be defeated with payments made to the victims after the fact.

In an analogous case, the Second Circuit held that payments made to investors to settle a private action had no effect on a claim by the SEC that a defendant violated securities laws. *See SEC v. First Jersey Sec., Inc.*,101 F.3d 1450, 1475 (2d Cir. 1996). There, the defendants argued that disgorgement was not needed to reimburse defrauded customers because the defendants had settled an action brought by and on behalf of those customers. *See* 101 F.3d 1450 (2d Cir. 1996). The Second Circuit stated that this argument was "wide of the mark." *Id.* The court reasoned that "[s]ince disgorgement is a method of forcing a defendant to give up the amount by which he was unjustly enriched, it is unlike an award of damages and is neither foreclosed nor confined by an amount for

which injured parties were willing to settle." *Id.* By the same token, the SEC's claim here is neither foreclosed nor confined by any post-scheme payments made to investors. Simply put, the Defendant cannot escape liability for his securities violations by making payments to investors after the fact or by relying on similar payments made by other violators.[2]

Further, contrary to the Defendant's representations, not all of these investors have been substantially repaid. The records available to the SEC indicate that while Brite Business may have returned Britt's entire investment, it returned only approximately $8.6 million of the $11.75 that Four Star invested and *none* of the $12.5 million that Fitzhenry invested.

While Fitzhenry is expected to receive a distribution from the SEC's proceeding against Raymond James Financial Services, Inc. ("RJFS"), that distribution will not make Fitzhenry whole, or anywhere close to it. In the RJFS proceeding, the SEC found Respondent RJFS liable for fraud and failure to supervise on the basis of some of the same conduct at issue in this matter and it ordered RJFS to pay disgorgement, prejudgment interest, and penalties totaling approximately $6,907,733. The SEC staff proposed a distribution plan that would distribute these funds to Fitzhenry and Monlezun on a *pro rata* basis. Pursuant to this plan, which is subject to SEC approval, Fitzhenry would recover 91.96% of the funds, or $6,352,351, plus any income generated pending

---

[2] To the extent that such post-scheme payments have relevance, they have relevance only to in determining what relief should issue as a result of the violations. *See Tull v. U.S.*, 481 U.S. 412, 425-26 (1987); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993); *SEC v. Tome*, 833 F.2d 1086, 1096 n.7 (2d Cir. 1987). Although these post-conduct payments have no bearing on liability, they may be considered by the Court on the issue of disgorgement. *See First Jersey*, 101 F.2d at 1475 ("[a] settlement payment, may properly, however, be taken into account <u>by the court</u> in calculating the amount to be disgorged.") (emphasis added). Accordingly, the SEC's proposed disgorgement figures give the Defendant credit for amounts that he and other Brite Business principals returned to wronged investors, for amounts paid in private settlements, and for amounts paid as a result of the SEC's enforcement action against RJFS.

distribution. In addition, Fitzhenry also received $2.5 million from RJFS to resolve a separate lawsuit. However, even when one takes into account the approximately $8,852,351 that Fitzhenry is likely to receive or has received from RJFS, he is still out approximately $3,647,649.[3]

In sum, the investors have not all been substantially repaid and even if they had been, these post-scheme payments would not invalidate the SEC's claims that the Defendant violated the securities laws. Accordingly, the Defendant's Motion should be denied.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION,

By its attorneys,

Luke T. Cadigan (Mass. Bar. No. 561117)
Senior Trial Counsel
Bradford E. Ali (Mass. Bar No. 649541)
Senior Counsel
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110
Tel. No. (617) 573-8919 (Cadigan)
Fax No. (617) 573-4590

Dated: July 24, 2006

[3] This sum does not even include the interest that Fitzhenry has been denied on the funds taken from him. To give a sense of the magnitude of this interest, the prejudgment interest on Fitzhenry's investment ($12.5 million) calculated from the time of the investment (March 27, 2000) would be approximately $5,948,714.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2006, I caused copies of the foregoing Opposition to Defendant's Motion *in Limine* to be served on each of the defendants at the addresses indicated below and by the methods indicated for each:

Defendant Charles W. Sullivan (Pro Se)
675 Third Avenue
New York, NY 10017
(By Fax and First-Class Mail)

Defendant Farouk A. Khan (Pro Se)
224 Hockenberry Road
Hillsboro, NJ 08844
(By First-Class Mail)

Luke T. Cadigan