**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CA 02-154 ML** |
| **CHARLES W. SULLIVAN,** | ) | |
| **Defendant.** | ) | |

# THE SEC'S MOTION *IN LIMINE* TO EXCLUDE DOCUMENTS AND MEMORANDUM IN SUPPORT OF MOTION

The Securities and Exchange Commission ("SEC") hereby moves *in limine* to exclude the following documents included on the Defendant's proposed list of exhibits first served on the SEC on July 14, 2006.[1]

***Sullivan Exhibit T-S: The Division of Enforcement's List of Witnesses and Exhibits dated December 30, 2004 in the Administrative Proceeding File #3-11692 entitled "In the matter of Raymond James Financial Services, Inc. J. Stephen Putnam and David Lee Ullom"*** **[Tab 1]**

The Defendant proposes to introduce this exhibit to "[s]how no violation of securities laws by Sullivan as to anybody."

The document is a list of witnesses and exhibits that SEC trial counsel tendered in a separate legal proceeding where the Defendant was neither a party nor a witness. The document reflects legal and strategic decisions made by SEC trial counsel as to what witnesses and exhibits would be necessary to prove its case in a different proceeding, involving different defendants, and different theories of liability. The SEC speculates

[1] In its initial Motion *in Limine* dated July 5, 2006, the SEC noted that it had yet to receive the Defendant's list of proposed trial exhibits and respectfully requested the opportunity to file an additional one after it has had the opportunity to see the evidence the Defendant intended to offer.

that the Defendant will attempt to raise the impermissible inference that because the SEC chose not to focus on his conduct *in that matter* (where he was not a defendant), this somehow has bearing on whether he has liability *in this matter* (where he is a defendant). However, the SEC chose not to focus on his conduct because it was not necessary to do so to prove liability against Raymond James Financial Services, Inc. ("RJFS") and its former President ("Putnam"), the respondents in the other proceeding. By the same token, in the other proceeding, the SEC also chose to not focus on the conduct of many other Brite Business principals (*i.e.,* Johan Hertzog, Michael Clarke, Robert Wachtel, Farouk Khan, Seaview Development Holdings, Ltd.). This does not suggest anything about their respective role in the fraudulent scheme, but only that it was not necessary to focus on their respective roles in proving the case against RJFS and Putnam.

The lack of the document's relevance is underscored by the fact that it was drafted and tendered by someone (SEC trial counsel) who was not a witness or participant in the alleged conduct,[2] long after the conduct at issue and indeed long after even the discovery cutoff in this matter.[3] Simply put, this document is not probative of whether the Defendant committed the securities violations alleged.

Accordingly, the SEC moves to exclude this document on the grounds that it is irrelevant, more prejudicial than probative, and likely only to confuse the jury.

[2] By using the filing of the SEC, irrelevant as it is, the Defendant is in essence attempting to make SEC trial counsel a witness in this matter and attempting to raise impermissible inferences from his words.

[3] The document was drafted and filed on December 30, 2004. The conduct alleged in the Complaint in this matter began in 1999 and continued until just before the Complaint was filed on April 1, 2002. Discovery cutoff in this matter was January 7, 2004 per Court's order dated October 31, 2003.

***Sullivan Exhibit AC-S: Memorandum in the matter of Raymond James Financial Services, Inc. J. Stephen Putnam and David Lee Ullom dated November 23, 2004 in the Administrative Proceeding File #3-11692 entitled "Memorandum in support of the Division's unopposed motion for the depositions of Rashed Al Bloushi and Mohamed Hamed."*** **[Tab 2]**

The Defendant proposes to introduce this exhibit to "[s]how no violation of securities laws by Sullivan as to Bloushi."

This document is a memorandum of law written by SEC trial counsel in support of an unopposed motion seeking permission to take the depositions of Rashed Bloushi ("Al Bloushi") and Mohamed Hamad ("Hamad"). As with the SEC's list of witnesses and exhibits in the RJFS matter, it is a document drafted by SEC trial counsel, who was neither a participant in nor witness to the alleged conduct, well after the alleged conduct and even well after the close of discovery. In addition, like the list of exhibits and witnesses, it was tendered in a separate legal proceeding where the focus was on the conduct of RJFS and its agent Dennis Herula ("Herula"), not on the Defendant. Any statements made by the SEC in that pleading have little bearing on whether the Defendant committed the alleged securities violations. (Indeed, it is not entirely clear what inference the Defendant is trying to raise from this document.)

Accordingly, the SEC moves to exclude this document on the grounds that it is irrelevant, and likely only to confuse the jury.

***Sullivan Exhibit U-S: Letter dated April 9, 2006 from M.B.Hamad to Luke Cadigan and Bradford Ali*** **[Tab 3]**

The Defendant proposes to introduce this exhibit to "[s]how no violation of securities laws by Sullivan as to Bloushi."

The document reflects correspondence from Al Bloushi written long after the conduct alleged in this matter and long after the discovery cutoff. The document was

written in connection with the proceedings against RJFS and accordingly focuses on the conduct of RJFS and its agent Herula. The SEC speculates that the Defendant will attempt to use this document, which does not mention him, to suggest that he had no role in the scheme against Al Bloushi. The introduction of this letter in a vacuum will only serve to confuse the jury and will be more prejudicial than probative.

Further, it is clear hearsay, insofar as it represents Hamad's out of court statement, offered by the Defendant to prove the truth of the matter asserted.

For these reasons, the document should be excluded.

***Sullivan Exhibit X-S: Email from Luke Cadigan to M.B. Hamad dated March 31, 2006 attaching Proposed Distribution Plan in the Administrative Proceeding File #3-11692 entitled "In the matter of Raymond James Financial Services, Inc. J. Stephen Putnam and David Lee Ullom"*** **[Tab 4]**

***Sullivan Exhibit Y-S: Letter from Luke Cadigan to Robert Fitzhenry and Malcolm Monlezun dated March 31, 2006 enclosing the Proposed Distribution Plan*** **[Tab 5]**

***Sullivan Exhibit Z-S: Letter from Raymond James to the SEC dated November 22, 2005 enclosing a cashier's check in the amount of US$ 6,907,733.01 Relevance, Authentication*** **[Tab 6]**

The Defendant proposes to introduce these exhibits to show no violation of securities laws by Sullivan as to Al Bloushi and Rheaume.

In his pretrial submissions, the Defendant has asserted that he should not have liability with respect to the scheme executed against investor Robert Fitzhenry because the SEC has ordered RJFS to pay approximately $7 million into a Fair Fund that will be distributed to Mr. Fitzhenry and another investor. As set forth in the SEC's Motion in Limine to Exclude Evidence Regarding Private Settlements and Third-Party Payments Made Pursuant to SEC Order, the fact that the Defendant or others may have made

payments to victims *after the violations were committed* has no bearing on the issue of whether violations were committed in the first place.

To the extent that such post-scheme payments have relevance, they have relevance only to in determining what relief should issue as a result of the violations. Because the Court (and not the jury) determines what relief should issue, evidence of post-conduct payments should not be introduced to the jury. *See Tull v. U.S.*, 481 U.S. 412, 425-26 (1987); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993); *SEC v. Tome*, 833 F.2d 1086, 1096 n.7 (2d Cir. 1987).[4]

For these reasons, these documents are not relevant to any issue that the jury will consider in this matter. They are more prejudicial than probative and only likely to confuse the jury. Accordingly, they should not be introduced to the jury on the issue of liability in this matter.

***Sullivan Exhibit AA-S Letter from M.B. Hamad to Luke Cadigan dated September 16, 2005* [Tab 7]**

The Defendant proposes to introduce this exhibit to "[s]how no violation of securities laws by Sullivan as to Bloushi."

This document reflects SEC trial counsel's e-mail to Hamad informing him of the decision in the RJFS administrative proceeding and Hamad's response. This exchange occurred long after the conduct alleged in this matter and long after the discovery cut-off, and is not probative of whether the Defendant committed the alleged securities violations. The SEC particularly objects to the introduction of the e-mail from SEC counsel, insofar

---

[4] As the SEC has previously noted, although these post-conduct payments have no bearing on liability, they may be considered by the Court on the issue of disgorgement. Accordingly, the SEC's proposed disgorgement figures give the Defendant credit for, *inter alia*, amounts paid as a result of the SEC's enforcement action against RJFS.

as 1) SEC trial counsel was neither a participant in nor a witness to the alleged conduct, 2) in the e-mail, SEC trial counsel is commenting on a ruling in the RJFS matter and these statements are not evidence; and 3) the Defendant is attempting to use SEC's trial counsel statements, taken out of context, as if he *were* a witness in this matter.

Further, the Defendant may be attempting have the jury to make the incorrect inference that because a judge in a different matter found, on different facts and different legal theories, that Al Bloushi did not rely on misrepresentations made by Herula, a completely different person, somehow that means that the Defendant has no liability *in this matter* for the misrepresentations that *he* made or for the substantial assistance *he* rendered to the scheme.[5] In any event, the introduction of this document would only confuse the jury and be more prejudicial than probative.

Accordingly, for the foregoing reasons, the SEC moves to exclude this document and the other documents referenced in this motion.

---

[5] *See, e.g., SEC v. Holschuh*, 694 F. 2d 130, 144 (7th Cir. 1982) (holding that defendant's post-sale activities, which were part of a single scheme, were actionable); *Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) (holding that post-sale lulling activities would be actionable as part of original sale); *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 48 (2d Cir. 1978) (finding that broker provided substantial assistance to adviser's fraud where his sole contribution was reassuring client that adviser was competent in executing trades), *op. amended*, NO. 77-7104, 77-7124, 1978 WL 4098 (May 22, 1978); *Lazzaro v. Manber*, 701 F. Supp. 353, 569 (E.D.N.Y. 1988) (statements to investors by broker about initial offering when broker should have known statements not supported by financials deemed substantial assistance to fraudulent offering).

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION,

By its attorneys,

Luke T. Cadigan (Mass. Bar. No. 561117)
Senior Trial Counsel
Bradford E. Ali (Mass. Bar No. 649541)
Senior Counsel
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110
Tel. No. (617) 573-8919 (Cadigan)
Fax No. (617) 573-4590

Dated: July 22, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2006, I caused copies of the foregoing Motion in Limine to be served on each of the defendants at the addresses indicated below and by the methods indicated for each:

Defendant Charles W. Sullivan (Pro Se)
675 Third Avenue
New York, NY 10017
(By Fax and on 7/24/07, First-Class Mail)

Defendant Farouk A. Khan (Pro Se)
224 Hockenberry Road
Hillsboro, NJ 08844
(By First-Class Mail on 7/24/07)

Luke T. Cadigan

T-5

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

| | |
|---|---|
| **In the Matter of** | |
| **RAYMOND JAMES FINANCIAL SERVICES, INC., J. STEPHEN PUTNAM and DAVID LEE ULLOM,** | Administrative Proceeding File No. 3-11692 |
| **Respondents.** | |

**THE DIVISION OF ENFORCEMENT'S LISTS OF WITNESSES AND EXHIBITS**

Pursuant to Rule 222 of the Commission's Rules of Practice, the Division of Enforcement (the "Division") hereby submits the following lists of witnesses and exhibits:[1]

## I. Witnesses

The Division expects to call the following witnesses at trial:[2]

1. Rashed Mohamed Mehran Al Bloushi
   Investor
   P.O. Box 43858
   Abu Dhabi, United Arab Emirates
   (By videotaped deposition)

Rashed Mohamed Mehran Al Bloushi will testify as to the circumstances surrounding his $7.5 million investment with Brite Business. He will also testify that he

[1] By agreement of the parties, the Division reserves the right to supplement and amend these lists as necessary in preparation of its case and anticipation of the subsequent exchange of marked exhibits. The Division further reserves the right to call additional witnesses and seek introduction of additional exhibits in rebuttal if necessary.

[2] The Division notes that depending upon the stipulations it reaches with the respondents and the testimony it elicits at the hearing, it may not need to call every witness on its list.

has yet to receive back the $7.5 million he invested, much less any return on that investment.

2. Barry S. Augenbraun, Esq.
Senior Vice President and Corporate Secretary
Raymond James Financial, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33176

Barry Augenbraun is expected to testify concerning his responsibilities as Senior Vice President and Corporate Secretary of Raymond James Financial, Inc., the organization of Raymond James, and red flags raised with respect to Herula, including a proposed transactions relating to Brite Business, Herula, and Ullom and complaints relating to Herula.

3. John Bowman
Assistant Vice President
Raymond James Financial Services, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33716

John Bowman, an assistant vice president at Raymond James Financial Services, Inc. ("RJFS") with compliance responsibilities, is expected to testify concerning the restriction placed on the Brite Business account and the review of account surveillance reports.

4. Kevin Carreno
Former Senior Vice President and Chief Compliance Officer
Raymond James Financial Services, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33716

Kevin Carreno is expected to testify concerning his role as head of compliance for RJFS and the supervisory policies and procedures that applied to Herula as a RJFS registered representative.

5. Robert Curl
Financial Adviser to Robert Fitzhenry
Presidential Suites, Number 11
Flamingo, Costa Rica

Robert Curl, Robert Fitzhenry's financial adviser, who handled the $12.5 million investment by Rheaume Holdings Ltd. with Brite Business, is expected to testify concerning the circumstances of the investment, including representations made by Herula as a RJFS representative about the safety of Rheaume's investment and the location of the funds invested. In addition to representations that Herula made in

correspondence drafted on RJFS letterhead, Curl is expected to testify concerning the verbal representations Herula made when Curl traveled to the Cranston branch of RJFS to investigate the proposed investment.

6. Michael DiGirolamo
Senior Vice President and Chief Compliance Officer
Raymond James Financial Services, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33716

Michael DiGirolamo is expected to testify concerning his role as head of compliance for RJFS and the supervisory policies and procedures that applied to Herula as an RJFS registered representative.

7. Martin D. Fife
Former President of Brite Business
(Designation of prior sworn testimony)

Pursuant to Rule 235(a)(1) of the Commission's Rules of Practice, the Division intends to designate brief passages of the prior sworn testimony of Defendant Martin D. Fife, now deceased, the former President of Brite Business, to explain aspects of the transfer of funds into and out of the Brite Business account at RJFS.

8. Robert Fitzhenry
Investor
Dar Es Salaam
Cooper Hill
St. James, Barbados

Robert Fitzhenry is expected to testify that in March 2000, he invested $12.5 million with Brite Business through his company, Rheaume Holdings, Ltd. In connection with this investment, Fitzhenry will testify that Herula made representations as a RJFS representative as to the safety of the investment and that after receiving these representations, Fitzhenry transferred $12.5 million to the Brite Business account at RJFS. Fitzhenry will further testify that Rheaume has not received any of the returns it had been promised on the investment, nor has it received back any of its principal.

9. Mark Gera
Branch Chief
U.S. Securities and Exchange Commission
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108

Mark Gera is expected to testify concerning the Commission's examination of the Cranston Branch of RJFS.

10. George L. Guerra, Esq.
(Former Vice President and Associate Corporate Counsel)
GrayRobinson
201 North Franklin Street, Suite 2200
Post Office Box 3324
Tampa, FL 33602

George L. Guerra, Esq. is expected to testify concerning the complaint sent to RJFS by Mohamad Hamad regarding Mr. Bloushi's investment.

11. M.B. Hamad
(Advisor to Rashed Bloushi on Brite Business investment)
General Manager, Adceco Group
P.O. Box 43858
Abu Dhabi, UAE
(By videotaped deposition)

M.B. Hamad, who handled the Brite Business investment for Bloushi, will testify as to the communications he had with Herula concerning Bloushi's investment and the representations Herula made on behalf of RJFS in those communications.

12. Dennis S. Herula
Former Raymond James Registered Representative
Englewood FDC
9595 W. Quincy Avenue
Littleton, CO 80123
(Live or by deposition)[3]

Dennis Herula is expected to testify about the circumstances surrounding the fraud he committed while acting as a RJFS registered representative in connection with the Brite Business scheme, and to which he has already pled guilty in a separate criminal matter.

13. Thomas James
President and Chief Executive Officer of Raymond James
Raymond James Financial, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33176

Thomas James, President and Chief Executive Officer of Raymond James Financial, Inc., is expected to testify concerning his awareness of and reaction to a proposed transaction with Brite Business.

[3] The Division is awaiting word from the respondents as to whether they will agree that Mr. Herula's trial testimony may be preserved by video-taped deposition.

14. John C. Maynard
Vice President and Director of National Sales
Raymond James Trust Company
710 Carillon Parkway
St. Petersburg, Florida 33716

John Maynard is expected to testify concerning red flags raised with respect to Herula, including proposed transactions relating to Brite Business, Herula and Ullom and subsequent communications among executives of RJFS and its affiliates relating to Brite Business, Herula and Ullom.

15. Randy L. Miller
Internal Auditor
Raymond James Financial Services, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33716

Randy Miller a RJFS internal auditor is expected to testify concerning the 1999 audit of the Cranston branch of RJFS.

16. Malcolm Monlezun
Investor
4876 Champions Drive
Lake Charles, Louisiana

Malcolm Monlezun is expected to testify about the circumstances concerning the $1 million that he and his wife invested at RJFS in late 2000, including Mr. Monlezun's communications with Dennis Herula, who served as the RJFS account manager. Mr. Monlezun will also testify that approximately $875,000 of his investment has not yet been returned.

17. David Ness
President
Raymond James Trust Company
710 Carillon Parkway
St. Petersburg, Florida 33716

David Ness is expected to testify concerning red flags raised with respect to Herula, including proposed transactions relating to Brite Business, Herula and Ullom and subsequent communications among executives of RJFS and its affiliates relating to Brite Business, Herula and Ullom.

18. Corliss Primavera
Investigator
U.S. Securities and Exchange Commission
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108

Corliss Primavera, a Commission investigator, is expected to testify as a summary witness concerning the flow of investor funds in and out of the relevant bank and brokerage accounts, including but not limited to the Brite Business account and the Capalbo account at RJFS.

19. Respondent J. Stephen Putnam
(Former President and Chief Operating Officer at RJFS)
Executive Vice President of Special Projects
Raymond James Financial, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33176

Respondent J. Stephen Putnam, President and COO of RJFS during the relevant period, is expected to testify concerning, *inter alia*, his dealings with Brite Business, Herula, and Ullom, including his concerns and skepticism regarding their activities; his awareness of correspondence that Herula had sent or was sending to potential Brite Business investors on behalf of RJFS; his approval of transfers from the Brite Business account at RJFS to an account controlled by Herula's wife; and the steps he took or failed to take in his supervision of Herula's activities.

20. Lara Thyagarajan, Esq.[4]
Counsel to RJFS
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

Lara Thyagarajan is expected to testify concerning representations made by her on behalf of RJFS concerning the supervisory policies and procedures that applied to Herula as an RJFS registered representative. She is also expected to testify about representations made as to RJFS's electronic mail retention policies, practices and procedures during the relevant period.

21. Respondent David Ullom
(Former Manager of Cranston Branch of RJFS)
270 Nicholas Road
Greene, RI 02827

[4] If the parties are able to reach an appropriate stipulation as to the representations made to the Division on behalf of Raymond James, the Division expects that it may not be necessary to call Ms. Thyagarajan as a witness.

Respondent David Ullom is expected to testify broadly concerning his responsibilities as branch manager of the Cranston, Rhode Island office of RJFS, the failure to supervise Herula, RJFS's supervisory policies and procedures, internal audits of the Cranston, RI office of RJFS, review of Herula's correspondence, oversight of work Herula performed outside of the office, transactions in RJFS accounts of Herula, Capalbo, Brite Business, Monlezun, and communications with Stephen Putnam and other executives of RJFS and its affiliates relating to Herula and Brite Business.

22. Thomas Wegner
Raymond James Financial Services, Inc.
880 Carillon Parkway
St. Petersburg, Florida 33716

Tom Wegner, a RJFS internal auditor, is expected to testify concerning the 2000 audit of the Cranston branch of RJFS

## II. Exhibits

The Division expects to offer as exhibits documents taken from the list of exhibits attached hereto as Exhibit A.

Respectfully submitted,

DIVISION OF ENFORCEMENT,
by its attorneys,

Luke T. Cadigan, Senior Trial Counsel
Ian D. Roffman, Senior Trial Counsel
Bradford Ali, Senior Counsel
Dawn Edick, Staff Attorney
U.S. Securities & Exchange Commission
73 Tremont Street, Suite 600
Boston, MA 02081
(617) 573-8919 (Cadigan)
(617) 424-5940 (Fax)

Dated: December 30, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 30, 2004, I served copies of the foregoing lists of witnesses and exhibits to each of the following by fax and first-class mail:

Honorable Brenda P. Murray, Chief Administrative Law Judge
Office of Administrative Law Judges
U.S. Securities and Exchange Commission (Stop 11-6)
450 5th Street, N.W., Room 10400
Washington, D.C. 20549-1106
Fax (202) 942-9655

**Counsel for Respondent Raymond James Financial Services, Inc.**
Burton W. Wiand, Esq.
Maya M. Wolfe, Esq.
Fowler White Boggs Banker
501 East Kennedy Boulevard
Tampa, FL 33602
Fax (813) 229-8313

Lara Thyagarajan, Esq.
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
Fax (617) 439-9556

**Counsel for J. Stephen Putnam**
Jerry A. Isenberg, Esq.
Thomas J. McGonigle, Esq.
Lindi L. Beaudreault, Esq.
LeClair Ryan, A Professional Corporation
1701 Pennsylvania Avenue N.W., Suite 1045
Washington, D.C. 20006
Fax (202) 659-4130

**Counsel for Respondent David Lee Ullom**
Willis H. Riccio, Esq.
Paul Curcio, Esq.
Adler Pollock & Sheehan P.C.
2300 Financial Plaza
Providence, RI 02903
Fax (401) 751-0604

Luke T. Cadigan, Esq.

The Division's Exhibit List dated 12/30/04

*In re Raymond James Financial Services, Inc. File No. 3-11692*

| Exhibit | Description |
|---|---|
| 1 | Letter dated 6/18/99 from Bloushi to SG Cowen (F 575-576; Dep. Ex. 50; Dep. Ex. 9, Bloushi Dep. Ex. 1) |
| 2 | Letter dated 6/21/99 from Bloushi to SG Cowen (F 566, Bloushi Dep. Ex. 2) |
| 3 | Letter dated 8/9/99 from SG Cowen to Bloushi (F 614; Dep. Ex. 56, Bloushi Dep. Ex. 3) |
| 4 | Letter dated 8/13/99 from Hertzog to SG Cowen (H/AB 12; Dep. Ex. 54; IT Ex. 95, Bloushi Dep. Ex. 4) |
| 5 | Bloushi-Brite Key Agreement dated 8/23/99 (H/AB 14-21: Dep. Ex. 53, Hamad Dep. Ex. 5) |
| 6 | Bloushi-Brite Private Placement Agreement dated 8/23/99 (H/AB 22- 33, Dep. Ex. 53, Hamad Dep. Ex. 6) |
| 7 | Letter dated 8/22/99 from Clarke to Bloushi (H/AB 13; Dep. Ex. 57, Hamad Dep. Ex. 7) |
| 8 | Letter dated 9/10/99 from Sullivan to Hamad (H/AB 45, Hamad Dep. Ex. 8) |
| 9 | Letter dated 9/24/99 from Clarke to Hamad (H/AB 34-35, Hamad Dep. Ex. 9) |
| 10 | Email dated 11/28/99 from Hertzog to Hamad (H/AB 78, IT Ex. 96, Hamad Dep. Ex. 10) |
| 11 | Letter dated 12/9/99 from Herula to Brite (H/AB 89; Dep. Ex. 61, Hamad Dep. Ex. 11) |
| 12 | Letter dated 1/21/00 from Herula to Bloushi (H/AB 90, Hamad Dep. Ex. 12) |
| 13 | Letter dated 1/26/00 from Bloushi to Herula (Hamad Dep. Ex. 13) |
| 14 | Letter dated 2/2/00 from Herula to Bloushi (H/AB 91, Hamad Dep. Ex. 14) |
| 15 | Letter dated 2/8/00 from Bloushi to Clarke (Hamad Dep. Ex. 15) |
| 16 | Fax dated 2/8/00 from Herula to Bloushi (H/AB 93, Hamad Dep. Ex. 16) |
| 17 | Letter dated 2/8/00 from Bloushi to Clarke (Hamad Dep. Ex. 17) |
| 18 | Letter dated 2/16/00 from Herula to Bloushi (H/AB 94, Hamad Dep. Ex. 18) |
| 19 | Letter dated 2/23/00 from Herula to Bloushi (H/AB 95, Hamad Dep. Ex. 19) |
| 20 | Letter dated 3/22/00 from Herula to Bloushi (H/AB 96, Hamad Dep. Ex. 20) |
| 21 | Letter dated 3/23/00 from Bloushi to Herula (Hamad Dep. Ex. 21) |
| 22 | Raymond James Financial Services web pages information |
| 23 | Letter dated 3/29/00 from Bloushi to Herula (Hamad Dep. Ex. 23) |
| 24 | Letter dated 3/29/00 from Herula to Bloushi (H/AB 97, Hamad Dep. Ex. 24) |
| 25 | Emails dated 3/27/00 from Hamad to RJFS investor support services (Hamad Dep. Ex. 25) |
| 26 | Letter dated 4/1/00 from Hamad to RJFS Legal Department w/correspondence attached (Hamad Dep. Ex. 26) |
| 27 | Email dated 5/7/01 from RJFS Legal Department to Hamad attaching Guerra letter (Hamad Dep. Ex. 27) |
| | *Exhibit Nos. 28 - 43 were offered by the Respondents at the deposition of Mr. Hamad* |
| 44 | Letter dated 3/9/00 from Herula to Fingessa (C/FH 0096-99; Dep. Ex. 43) |
| 45 | Letter dated 3/10/00 from Herula to Fitzhenry (C/FH 0010; Dep. Ex. 2) |
| 46 | Letter dated 3/15/00 from Sullivan to Herula (C/FH 0093; Dep. Ex. 3) |
| 47 | Brite-Rheaume Holdings Contract Agreement dated 3/23/00 fax version (C/FH 0048-51; Dep. Ex. 4) |
| 48 | Brite-Rheaume Holdings Contract Agreement dated 3/23/00 (C/FH 0065-66; Dep Ex. 5) |
| 49 | Fax dated 3/24/00 from Fitzhenry to Barclays (Dep. Ex. 41) |
| 50 | Letter dated 3/28/00 from Fife to Fitzhenry and Curl (C/FH 0061; Dep. Ex. 6) |
| 51 | Fax dated 3/30/00 from Barclays to Fitzhenry (C/FH 0012-13; Dep. Ex. 7) |
| 52 | Letter dated 4/5/00 from Herula to Fitzhenry (C/FH 0095; Dep. Ex. 8) |
| 53 | Letter dated 4/25/00 from Herula to Fitzhenry (C/FH 0038; Dep. Ex. 9) |
| 54 | Letter dated 5/8/00 from Fife to Curl, Fitzhenry and McDonald (C/FH 0014-15; Dep Ex. 44) |
| 55 | Letter dated 7/12/00 from Herula to Curl (C/FH 0016-17; Dep. Ex. 11) |
| 56 | Fax dated 7/17/00 from Fife to Curl (C/FH 0020-021; Dep. Ex. 12) |
| 57 | Fax dated 8/10/00 from Fife to Curl with attached letter (C/FH 0018-0019; Ex. 14) |
| 58 | Letter dated 12/28/00 from Curl to Capalbo (C/FH 0035; Ex. 16) |
| 59 | Fax dated 12/29/00 from Fife to Curl (C/FH 0070-71; Dep. Ex. 17) |
| 60 | Monlezun's New Account Form dated 10/24/00 (MM003-004; Monlezun Dep. Ex. 162) |
| 61 | Monlezun's Limited Power of Attorney dated 10/24/00 (MM005; Monlezun Dep. Ex. 163) |
| 62 | Fax dated 10/24/00 from Monlezun to Herula (MM002; Monlezun Dep. Ex. 161) |
| 63 | Monlezun's address and fax list (MM 001; Monlezun Dep. Ex. 160) |
| 64 | Fax dated 10/25/00 from Herula to Monlezun (MM006; Monlezun Dep. Ex. 164) |
| 65 | Hibernia Bank $1M wire transfer slip dated 10/26/00 (MM0085; Monlezun Dep. Ex. 165) |
| 66 | Fax dated 10/26/00 from Monlezun to Herula (MM007; Monlezun Dep. Ex. 166) |
| 67 | Letter dated 10/26/00 from Fife to Herula (SEC2-042; IT Ex. 74; Ex. 154) |
| 68 | Monlezun's Raymond James account balance as of 10/30/00 (MM008; Monlezun Dep. Ex. 167) |
| 69 | Letter dated 10/30/00 from Dennis Herula to Martin D. Fife (SEC 2/11/02-0454) |
| 70 | Letter dated 11/1/00 from Herula to Fife (Ex. 156) |
| 71 | Transfer request dated 11/21/00 from Capalbo to Raymond James (SEC 2/11/02-0307; IT Ex. 110) |

The Division's Exhibit List dated 12/30/04

*In re Raymond James Financial Services, Inc. File No. 3-11692*

| Exhibit | Description |
|---|---|
| 72 | Letter dated 11/21/00 from Monlezun to Herula (SEC 2/11/02-0308; IT Ex. 131) |
| 73 | Fax dated 11/21/00 from Monlezun to Herula (MM009; Dep. Ex. 168) |
| 74 | Transfer request dated 11/21/00 from Monlezun to Herula (RJ SEC 200) |
| 75 | Letter dated 11/22/00 from Capalbo to Monlezun (MM010; Dep. Ex. 169) |
| 76 | Letter dated 11/28/00 from Capalbo to Monlezun (MM086; Dep. Ex. 170; IT Ex. 109) |
| 77 | Monlezun's 2000 1099-DIV statement (MM 11; Dep. Ex. 171) |
| 78 | Hibernia NA Bank Funds Transfer Notification dated 2/6/01 to Malcolm J. Monlezun (SEC/MM 00013; Ex. 173) |
| 79 | Email dated 12/20/01 from Herula to Monlezun (IT Ex. 111) |
| 80 | Email dated 12/21/01 from Herula to Monlezun (IT Ex. 112) |
| 81 | Malcolm Monlezun investment portfolio reports 10/25/00 - 12/29/00 (SEC/Herula 2455 - 2463) |
| 82 | Plea Agreement and Statement of Facts Relevant to Sentencing dated 10/21/04, USA v. Herula, Criminal Action No. 04-CR-449 (D. Colo.) |
| 83 | Transcript of Hearing on Change of Plea dated 11/4/04, USA v. Herula, Criminal Action No. 04-CR-449 (D. Colo.) |
| 84 | Change of Plea Minutes dated 11/4/04, *USA v. Herula*Criminal Action No. 04-CR-449-RB (D. Colo.) |
| 85 | Statement by Defendant in Advance of Plea of Guilty dated 11/7/04, USA v. Herula, Criminal Action No. 04-CR-449 (D. Colo.) |
| 86 | Indictment/Information as to Dennis Herula, *USA v. Herula*Criminal Action Criminal Action No. 04-CR-449 (D. Colo.) |
| 87 | Summary of Account Balances & Investment Activities prepared at instruction of Martin Fife (F 1499, IT Ex. 6) |
| 88 | Affidavit of Martin D. Fife in Opposition to SEC's Motion for a Preliminary Injunction and Order Freezing Assets, *SEC v. Herula*, Civil Action No. 02-154-ML (D.R.I.) |
| 89 | Wire information dated 11/12/99 - 7/21/00 for Raymond James Brite Business Corp. Account |
| 90 | Wire information dated 4/5/00 - 11/27/00 for Raymond James Capalbo Special Client Account |
| 91 | Checks dated 5/1/00 - 12/3/00 for Raymond James Capalbo Special Client Account |
| 92 | Raymond James Brite Business Corp. Special Account investment portfolio reports 12/15/99 - 9/29/00 (NASD/Herula 349 - 369) |
| 93 | Raymond James Capalbo Special Client Account investment portfolio reports 3/28/00 - 10/31/01 (SEC/Herula 489 - 559) |
| 94 | Raymond James Seaview Development investment portfolio reports 8/4/00 - 1/31/02 (RJFS-Brite 128 - 150; SEC/Herula 589 - 614, 2903 - 2916) |
| 95 | Raymond James Seaview Development Special Account investment portfolio reports 9/15/00 - 11/30/01 (SEC/Herula 2917 - 2942) |
| 96 | Raymond James Seaview account statements (F 1935-1951; IT Ex. 82) |
| 97 | Letter dated 10/18/99 from Fife/Hertzog to CIBC WoodGundy (F 953, IT Ex. 112) |
| 98 | Letter dated 11/18/99 from Fife to Telebank |
| 99 | Summary Chart |
| 100 | Transaction History for Raymond James Account #58003682 (Brite Business Corp.) prepared by C. Primavera |
| 101 | Transaction History for Raymond James Account #58005252 (Brite Business Corp. Special) prepared by C. Primavera |
| 102 | Transaction History for Raymond James Account #49114444 (Mary Lee Capalbo Special Client) prepared by C. Primavera |
| 103 | Transaction History for Raymond James Account #53902669 (Seaview Development & Holdings Ltd.) prepared by C. Primavera |
| 104 | Transaction History for Raymond James Account #57038258 (Seaview Development & Holdings Ltd. Special) prepared by C. Primavera |
| 105 | Transaction History for Raymond James Account #44902174 (Malcolm J. Monlezun & Ursula Daigle Monlezun JT/WROS), prepared by C. Primavera |
| 106 | Robert Thomas Securities, Inc. interoffice correspondence dated 6/5/92 from Putnam to Those Concerned re: Ullom (SEC (Herula) 2419; Ex. 142) |
| 107 | Robert Thomas Securities, Inc. Registered Representative Agreement dated 7/7/97 with Ullom (SEC (Herula) 2322; Ex. 134) |
| 108 | 2/11/99 Everen Securities letters involving Cooper incident (IT Ex. 176) |
| 109 | Letter dated 7/29/99 from Ullom to Herula (Dep Ex. 116) |

The Division's Exhibit List dated 12/30/04

*In re Raymond James Financial Services, Inc. File No. 3-11692*

| Exhibit | Description |
|---|---|
| 110 | Letter dated 7/29/99 from Ullom to Herula (SEC-561 781) |
| 111 | Raymond James Financial Services, Inc. Registered Representive Agreement dated 8/6/99 with Herula (SEC-561 782) |
| 112 | Raymond James Request to Engage in Outside Activity dated 8/6/99 for Herula (SEC 561 780) |
| 113 | Raymond James New Account Form dated 8/10/99 for Capalbo Special Client Account No. 4911-4444 (SEC(Herula) 0485; RJFS-Brite 202; NASD(Herula) 0403; IT Ex. 123) |
| 114 | Check for $200 dated 8/23/99 paid from Foxhill to Herula (FXHL 0120 - 0121) |
| 115 | Raymond James New Account Form dated 9/15/99 for Herula and Capalbo Account No. Unknown |
| 116 | Restriction dated 9/22/99 placed on Capalbo's personal account (IT Ex. 178) |
| 117 | Raymond James New Account Form dated October, 1999 for Brite Business Corp. Account No. 5800-3682 (SEC(Herula) 0339; NASD/Herula - 262; IT Ex. 4) |
| 118 | Raymond James Corporation Resolution - Cash Accounts Certification dated 10/19/99 for Brite Business Corp. Account No. 5800-3682 (SEC(Herula) 338; NASD/Herula 261; IT Ex. 9; Ex. 110) |
| 119 | Fax dated 11/5/99 from Capalbo to Doidge (SEC 346; Dep. Ex. 113; IT Ex. 43) |
| 120 | Letter dated 11/5/99 from Herula to Carreno (Ex. 174) |
| 121 | Fax dated 11/12/99 from Fife to Herula w/Ullom approval signature (RJ SEC 385) |
| 122 | Herula/Capalbo Elite Investment Margin Account Application Form dated 11/13/99 |
| 123 | Check dated 11/29/99 in the amount of $90,000 payable to Foxhill Management by Mary Lee Capalbo (SEC 2/11/02 1267 -1268) |
| 124 | Check (front & back) dated 11/29/99 in the amount of $90,000 payable to Foxhill Management by Mary Lee Capalbo (IT Ex. 117) |
| 125 | Raymond James New Account Form dated December, 1999 for Brite Business Corp. Account No. 5800-3682 (SEC(Herula) 0341; NASD/Herula 264; IT Ex. 7) |
| 126 | Herula Capalbo Marriage Certificate dated 12/2/99 |
| 127 | Brite Business New Account form dated 12/8/99 (SEC 0341; IT Ex. 7) |
| 128 | Trade confirmations dated 12/9/99 (SEC 6204-6206; IT Ex. 8) |
| 129 | Herula/Capalbo Margin account New Account form dated 12/15/99 |
| 130 | Check for $2017.23 dated 12/31/99 from Foxhill to Herula w/deposit slip |
| 131 | Fax dated 1/4/00 from Herula to RJFS attaching marriage certificate (IT Ex. 228) |
| 132 | Email dated 1/18/00 from Herula to Ullom (SEC-561 01868) |
| 133 | Email dated 1/18/00 from Herula to Ullom (SEC-561 01866 - 01867) |
| 134 | Memo dated 2/4/00 from Compliance Dept to Ullom w/account detail report (FXHL 0321 - 0322) |
| 135 | Email dated 2/25/00 from Herula to Ullom (SEC 561 01877) |
| 136 | Fax dated 2/29/00 from Ullom to Margin Dept. attaching transfer request (RJ SEC 379 - 380) |
| 137 | Letter dated 3/6/00 from Ullom to Miles Tukat (SEC 2/11/02-0855) |
| 138 | Letter dated 3/9/00 from Ullom to Gala Resources (IT Ex. 120) |
| 139 | Letter dated 3/9/00 from Ullom to Dear Sir (SEC 2/11/02-833) |
| 140 | Letter dated 3/13/00 from Fife to Ullom (RJ-SEC 461; Ex. 232) |
| 141 | Letter dated 3/13/00 from Fife to Ullom (Ex. 204) |
| 142 | Raymond James New Account Form dated 3/28/00 for Capalbo Special Client Account No. 4911-4444 (SEC(Herula) 0478; RJFS-Brite 195; NASD(Herula) 0396; IT Ex. 105) |
| 143 | Raymond James New Account form dated 3/28/00 for Capalbo Special Client account (RJ SEC 204, SEC-04878 IT Ex. 105, Dep Ex. 120) |
| 144 | Check for $1380.59 dated 4/6/00 from Foxhill to Herula (FXHL 0049) |
| 145 | Letter dated 4/6/00 from Herula to Onukwugha (Ullom Dep. Ex. 121; IT Ex. 150A) |
| 146 | Fax dated 5/8/00 from Herula to Ullom (IT Ex. 145) |
| 147 | Letter dated 6/28/00 from Ullom to Dorian Brisbois (SEC 531-01859) |
| 148 | Check for $227.43 dated 7/5/00 from Foxhill to Herula (FXHL 0047) |
| 149 | Letter dated 7/10/00 from Cohn/Four Star to Herula (SEC Herula 0082 - 0087, IT Ex. 235) |
| 150 | Fax dated 7/12/00 (12:09) from Cohn/Four Star to Ullom (SEC 0089; IT Ex. 209) |
| 151 | Fax dated 7/12/00 (12:41) from Cohn/Four Star to Ullom w/ attachments (SEC 0093 - 0100) |
| 152 | Fax dated 7/12/00 (13:35) from Cohn/Four Star to Ullom w/ attachments (SEC 0102 - 0106) |
| 153 | Letter dated 7/12/00 from Ullom to Cohn/Four Star (SEC(Herula) 0091; NASD/Herula 039; Ex 147) |
| 154 | Letter dated 7/25/00 from Ullom to Whom it May Concern re: Herula (SEC 2/11/02-0082) |
| 155 | Fax dated 8/10/00 from Cohn/Four Star to Ullom (SEC 2/11/12 0518) |

| Exhibit | Description |
|---|---|
| 156 | Fax dated 8/10/00 from Cohn/Four Star to Ullom re: Brite Business (SEC-0111; SEC(Herula) 0108, IT Ex. 146) |
| 157 | Fax dated 8/11/00 from Cohn/Four Star to Ullom (SEC 0113) |
| 158 | Seaview Elite Investment Account Application Form dated 8/17/00 w/ RJ receipt stamp (SEC 2214) |
| 159 | Seaview New Account Form dated 8/17/00 (SEC 2211) |
| 160 | Check dated 8/18/00 for $50K from Capalbo to Foxhill (IT Ex. 118; Dep Ex. 119) |
| 161 | Fax dated 8/30/00 from Cohn/Four Star to Ullom (SEC 0118 - 120) |
| 162 | Check for $20,000 # 2576 dated 10/13/00 from Foxhill to Jason Ullom (FXHL 0005 - 0006) |
| 163 | Check for $20,000 # 2577 dated 10/13/00 from Foxhill to Ullom (FXHL 0003 - 0004) |
| 164 | Letter dated 11/9/00 from Ullom to Herula (SEC-561 01861) |
| 165 | 11/10/00 Fidelity International Investments Elite Account NAF and $11,880,000 letter of credit (IT Ex. 149) |
| 166 | Mondial's New Account Form dated 11/16/00 (SEC-561 052, FXHL 1136) |
| 167 | Check for $14,300 dated 11/16/00 from Foxhill to Herula |
| 168 | Unsigned letter dated 11/16/00 from Ullom to Herula (SEC-561 01856) |
| 169 | Letter dated 11/16/00 from David to Dennis (SEC 561-01856) |
| 170 | Fax dated 11/21/00 from Dobson to Fife/Mondial w/POA attached (FXHL 1138-1139) |
| 171 | Fax dated 12/28/00 from Ullom to AGHITECH / LeDuc (FXHL 1174) |
| 172 | Fax dated 1/4/01 from Ullom to LeDuc (FXHL 1177; SEC-561 072) |
| 173 | AGHITECH New Account Form dated 1/4/01 (FXHL 1164; SEC-561 060) |
| 174 | Check dated 2/20/01 in the amount $1152.19 payable to Foxhill Management by Legacy 2000 Inc. (IT Ex. 130) |
| 175 | Emails dated 3/2/01 from Herula to Ullom and suceeding emails (RJ-SEC 1916) (IT Ex. 128) |
| 176 | Account restriction screen print (RJ-SEC 1002, IT Ex. 221) |
| 177 | Letter dated 11/4/02 from David L. Ullom to Unaddressed (SEC 561-01864) |
| 178 | Statement of Financial Condition of David Ullom dated 11/30/03 |
| 179 | Statement of Financial Condition of David Ullom dated 4/26/04 |
| 180 | Check for $10,000 dated 11/12/04 from Adler Pollock to Registry of the Court *SEC v. Herula* Civil Action # CA 02-154 (D. R.I.) |
| 181 | Consent of Relief Defendant David L. Ullom, *SEC v. Herula* Civil Action # CA 02-154 (D. R.I.) dated 12/3/04 |
| 182 | Final Judgment as to Relief Defendant David L. Ullom, *SEC v. Herula* Civil Action # CA 02-154 (D. R.I.) dated 12/6/04 |
| 183 | Fax dated 11/29/99 from Herula to Salit (RJ SEC 386 - 387) |
| 184 | Fax dated 12/29/99 from Herula to Raymond James |
| 185 | Letter dated 2/29/00 from Fife to Herula (SEC Herula 0369, NASD/Herula 292. IT Ex. 54) |
| 186 | Fax dated 3/1/00 from Ullom to Margin Dept. attaching transfer request (RJ-SEC 374 -375) |
| 187 | Transfer request dated 3/30/00 from Fife to Herula w/Ullom approval signature (RJ SEC 219 - 220) |
| 188 | Fax dated 3/30/00 from Fife to Herula w/Ullom approval signature (RJ SEC 400) |
| 189 | Letter dated 3/30/00 from Fife to Herula (SEC Herula 0360, NASD/Herula 283. IT Ex. 124) |
| 190 | Fax dated 4/4/00 from Ullom branch to Customer Account Dept. attaching transfer request (RJFS Brite 196 - 197; IT Ex. 107) |
| 191 | Transfer request dated 4/6/00 from Fife to Herula w/Ullom approval signature (RJ SEC 397; IT Ex. 125, Dep. Ex. 157) |
| 192 | Letter dated 4/6/00 from Fife to Herula (SEC Herula 0358, NASD/Herula 0281, IT Ex. 107, Dep. Ex. 157) |
| 193 | Letter dated 4/10/00 from Capalbo to Raymond James (SEC 2/11/02-0390; IT Ex.122) |
| 194 | Letter dated 4/10/00 from Capalbo to Raymond James (F 1143, IT Ex. 80) |
| 195 | Fax dated 4/13/00 from Ullom branch to Customer Account Dept. attaching transfer request (RJ SEC 395 - 396) |
| 196 | Letter dated 4/13/00 from Fife to Herula (SEC Herula 0356, NASD/Herula 0279, IT Ex. 126) |
| 197 | Letter dated 4/25/00 from Herula to Fitzhenry (C/FH 266, IT Ex. 99) |
| 198 | Transfer request dated 5/23/00 from Fife to Herula w/ Ullom approval signature (SEC-561 1103) |
| 199 | Transfer request dated 6/16/00 from Capalbo to Raymond James (SEC -561 1100 - 1102) |
| 200 | Fax dated 6/16/00 from Ullom branch to Customer Account Dept. attaching transfer request (RJ SEC 392 - 394) |
| 201 | Fax dated 6/28/00 from Ullom to Blems attaching transfer request (FXHL 1252 - 1253; SEC-561 1096 - 1097) |
| 202 | Fax dated 6/30/00 Dana to Heritage attaching transfer request (FXHL 1250 - 1251, SEC-561 1093-1094) |
| 203 | Fax dated 7/18/00 from Sullivan to Fife (RJ-SEC 195-196, IT Ex. 212) |

| Exhibit | Description |
|---|---|
| 204 | Fax dated 7/19/00 from Ullom branch to Customer Account Dept. attaching transfer request (FXHL 1248 - 1249; SEC-561 1091-1092) |
| 205 | Fax dated 8/3/00 from Fife to Herula (SEC Herula 0350, NASD/Herula 0273, IT Ex. 127) |
| 206 | Fax dated 8/4/00 from Ullom branch to Customer Account Dept. attaching transfer request (RJ SEC 390 - 391, SEC 350) |
| 207 | Transfer request dated 8/14/00 from Capalbo to Herula w/Ullom approval signature (RJ SEC 215-216) |
| 208 | Letter dated 8/22/00 from Capalbo to Herula (SEC Herula 0470, NASD/Herula 0388, RJFS-Brite 187) |
| 209 | Letter dated 8/22/00 from Capalbo to Herula (SEC 2/11/02-0404, IT Ex. 123) |
| 210 | Transfer request dated 8/24/00 from Capalbo to RJFS (SEC-516 1086) |
| 211 | Letter dated 8/25/00 from Capalbo to Ullom (SEC Herula 6213, NASD/Herula 0543, IT Ex. 128) |
| 212 | Transfer request dated 8/30/00 from Capalbo to RJFS w/ Ullom approval signature (SEC-561 1085) |
| 213 | Transfer request dated 8/30/00 from Capalbo to RJFS w/ Ullom approval signature (RJ SEC 214) |
| 214 | Fax dated 9/14/00 from Ullom to Heritage Operations attaching transfer request (RJ SEC 211 - 212) |
| 215 | Letter dated 9/15/00 from Capalbo to Raymond James (Dep. Ex. 162) |
| 216 | Transfer request dated 9/15/00 from Capalbo to RJFS w/ Ullom approval signature (SEC-561 1081) |
| 217 | Transfer request dated 9/15/00 from Fife to Herula w/Ullom approval signature (SEC-427, IT Ex. 207) |
| 218 | Fax dated 10/16/00 from Lou to Treasury attaching transfer request w/ Ullom approval signature (SEC-561 1079 - 1080) |
| 219 | Fax dated 10/18/00 from Capalbo to Herula w/ Ullom approval signature (SEC 0466) |
| 220 | Letter dated 10/18/00 from Capalbo to Herula (IT Ex. 129) |
| 221 | Transfer request dated 10/26/00 from Fife to Herula w/ Ullom approval signature (RJ SEC 209) |
| 222 | Transfer request dated 10/26/00 from Ullom branch to "Myris" w/ Ullom approval signature (RJ SEC 207 -208) |
| 223 | Transfer request dated 10/30/00 from Capalbo to Herula (SEC-561 1076) |
| 224 | Fax dated 11/27/00 from RJ Dobson to RJ Customer Account Dept attaching transfer request (RJ SEC 198-199) |
| 225 | Fax dated 12/4/00 from Fife to Herula w/ Ullom approval signature attaching transfer request (RJ SEC 197) |
| 226 | Fax dated 12/4/00 from Fife to Herula (SEC 2/11/02-0420) |
| 227 | Funds transfer notification confirm dated 1/8/01 to Montezun (MM 12; IT Ex. 172) |
| 228 | Foxhill's Citizens Bank checking account Reconciliation Report 12/00 (FXHL 0059 - 0061) |
| 229 | Foxhill's Citizens Bank account statements Jan.- Dec. 1999 (FXHL 0076 - 0119) |
| 230 | Foxhill's Citizens Bank check register Jan.- Dec. 1999 (FXHL 0399 - 0417) |
| 231 | Foxhill's Citizens Bank check register Aug.- Dec. 1999 (FXHL 0068 - 0075) |
| 232 | Foxhill's Citizens Bank account statements Jan.- Dec. 2000 (FXHL 0010 - 0046) |
| 233 | Foxhill's Citizens Bank check register 12/00 (FXHL 0059-061) |
| 234 | Foxhill's Citizens Bank account statements Jan 2001 - Jan 2002 (FXHL 0153 - 0191) |
| 235 | Foxhill's Citizens Bank check register Jan.- Dec. 2001 (FXHL 0142 - 0152) |
| 236 | Herula's commission report 10/99 - 2/00 (FXHL 0202 - 0203) |
| 237 | Herula's commission report 10/99 - 9/00 (FXHL 0326 - 0327) |
| 238 | Email dated 10/26/99 from Putnam to Maynard and Ness and preceding email (IT Ex. 187) |
| 239 | Email dated 10/26/99 from Putnam to Maynard and Ness (RJ-SEC 542, IT Ex 184) |
| 240 | Email dated 10/28/99 from Herula to Putnam and others (IT Ex. 163) |
| 241 | Notes from 11/99 internal meeting re: Brite Business (IT Ex. 186) |
| 242 | Letter dated 11/2/99 from Sullivan to Raymond James (Sullivan Dep. Ex. 116; IT Ex. 30) |
| 243 | Letter dated 11/3/99 from Sullivan to Raymond James (Sullivan Dep. Ex. 117) |
| 244 | Email dated 11/9/99 from Tremaine to Maynard, et al, and preceding emails (IT Ex. 188; RJ-SEC 551-552) |
| 245 | Email dated 11/10/99 from Ness to Putnam and preceding emails (IT Ex. 189; RJ-SEC 555 - 556) |
| 246 | Email dated 11/10/99 from Ness to Ullom (RJ-SEC 557) |
| 247 | Email dated 11/10/99 from Putnam to Maynard and preceding emails (RJ-SEC 1917) |
| 248 | Email dated 11/15/99 from Maynard to Ness and preceding emails (IT Ex. 190; RJ-SEC 558 - 559) |
| 249 | Email dated 12/13/99 from Putnam to Ullom and preceding email (IT Ex. 191) |
| 250 | Email dated 12/16/99 from Sayler to Putnam and preceding emails (RJ-SEC 491-492; IT Ex. 192) |
| 251 | Email dated 12/20/99 from DiGirolamo to Putnam (RJ-SEC 493; IT Ex. 193) |
| 252 | Email dated 1/6/00 from Putnam to Putnam (RJ-SEC 494;IT Ex. 195) |
| 253 | Email dated 1/9/00 from Putnam to Thomas James and preceding email (RJ-SEC 1877-1878) |
| 254 | Fax dated 1/10/00 from Putnam to Augenbraun (RJ-SEC 416 - 422, IT Ex. 161) |
| 255 | Email dated 1/10/00 from Putnam to Augenbraun and preceding email (RJ-SEC 1876) |
| 256 | Putnam's notes of 1/11/01 meeting with Fife (IT Ex. 196) |

| Exhibit | Description |
|---|---|
| 257 | 1/13/00, 1/14/00 and 1/14/00 faxed letters from Fife/Doidge to Putnam, cc: Augenbraun (RJ-SEC 454-460; IT Ex. 162) |
| 258 | Email dated 1/13/00 from Putnam to Tremaine and preceding email (RJ-SEC 1868- 1869) |
| 259 | Email dated 1/18/00 from Maynard to Putnam and preceding email (RJ-SEC 1885-1886) |
| 260 | Email dated 1/18/00 from Maynard to Ness (RJ-SEC 573 - 574; IT Ex. 217) |
| 261 | Email dated 1/18/00 from Ness to Maynard and preceding emails (RJ-SEC 575-576; IT Ex. 173) |
| 262 | Fax dated 1/20/00 from Herula to Putnam (RJ SEC 501-508; IT Ex. 198) |
| 263 | Letter dated 1/28/00 from Fife to Putnam (RJ-SEC 534 - 535; IT Ex. 199 excerpt) |
| 264 | Letter dated 1/28/00 from Fife to Putnam (RJ-SEC 1499-1500) |
| 265 | Fax dated 2/1/00 from Putnam to Fife (RJ-SEC 538-539; IT Ex. 200) |
| 266 | Email dated 2/24/00 from Kritsas to Doe and Bartolo and preceding emails (RJ-SEC 1384; IT Ex. 201) |
| 267 | Email dated 2/29/00 from Putnam to Vigeveno and preceding email (IT Ex. 202) |
| 268 | Email dated 3/5/00 from Herula to Putnam, cc: David Ullom re: Brite Trust (IT Ex. 144) |
| 269 | Email dated 3/7/00 from Putnam to Ness and preceding emails (RJ-SEC 562-563; IT Ex. 203) |
| 270 | Email dated 3/14/00 from Herula to Putnam (RJ-SEC 1383; IT Ex. 194) |
| 271 | Email dated 3/15/00 from Putnam to Sayler and preceding emails (RJ-SEC 1820-1821) |
| 272 | Fax dated 3/20/00 from McGovern to Tuorto (RJ SEC 1385 - 1389; IT Ex. 205) |
| 273 | Email dated 3/24/00 from Bowman to New Accounts and preceding emails (SEC-0365; IT Ex. 122) |
| 274 | Email dated 5/3/00 from Ness to Putnam (RJ-SEC 564) |
| 275 | Email dated 5/5/00 from Putnam to Ullom (IT Ex. 208) |
| 276 | Email dated 5/26/00 from Putnam to Wood (RJ-SEC 1815) |
| 277 | Email dated 7/13/00 from Ullom to Putnam and preceding email (RJ SEC 1798 - 1800, Dep Ex. 127) |
| 278 | Email dated 7/13/00 from Ullom to Putnam and preceding email (IT Ex. 135) |
| 279 | Email dated 8/21/00 from Maynard to Ness and preceding emails (RJ-SEC 580, IT Ex. 213) |
| 280 | Email dated 8/21/00 from Maynard to Ness, et al and preceding email (RJ-SEC 578, IT Ex. 218) |
| 281 | Email dated 10/28/00 from Herula to Putnam and preceding emails (IT Ex. 163) |
| 282 | Letter dated 11/2/00 from Herula to Delgado and Rodrigues (RJ-SEC 463; Ex. 168) |
| 283 | Herula's Form U-5 (SEC Herula 0034 - 0041) |
| 284 | Email dated 1/9/01 from Nancy Samson to Putnam |
| 285 | Amendment to Herula's U-5 Form dated 10/25/01 (SEC 2/11/02 - 0646-0649) |
| 286 | Web CRD Form U4-Amendment dated 11/19/04 for John Stephen Putnam |
| 287 | Web CRD Registrations Summary dated 12/30/04 for John S. Putnam |
| 288 | Letter dated 1/12/00 from Murphy to Augenbraun (RJ-SEC 428 - 450; IT Ex. 169) |
| 289 | Notes of Augenbraun (IT Ex. 167) |
| 290 | Handwritten note dated 12/26/00 re: conference call (RJ-SEC 1390) |
| 291 | Raymond James Financial, Inc. Form 10-K for the Fiscal Year ended Sept. 29, 2000 |
| 292 | Letter dated 8/23/99 from Herula to Carreno (IT Ex. 175) |
| 293 | Letter/Subpoena dated 5/30/02 from Sandra J. Bailey (SEC) to George Guerra (Raymond James) (Ex. 181) |
| 294 | Email dated 8/21/00 from Nagorka to Tuorto and preceding emails (RJ-SEC 1900- 1901) |
| 295 | 1999 Audit Summary (RJ-SEC 721 - 722) |
| 296 | Branch OSJ Monthly Compliance Report dated November 1999 (SEC-561 1660-1663) |
| 297 | Letter dated 12/1/99 from Zahradnick to Ullom (RJ-SEC 583) |
| 298 | Letter dated 12/3/99 from Ullom to Zahradnick (RJ-SEC 584) |
| 299 | 2000 Audit Summary (RJ-SEC 712 - 719) |
| 300 | Ullom's acknowledgment of 2000 Audit Findings dated 9/19/00 |
| 301 | Ullom's Annual Compliance Interview report dated 9/25/00 (RJ SEC 597 - 602) |
| 302 | Letter dated 10/5/00 from Nagorka to Ullom (RJ-SEC 723 - 724) |
| 303 | Memo dated 10/25/00 from Ullom to Nagorka (RJ-SEC 585) |
| 304 | Compliance Memorandum dated 11/5/01 from Douglas to Ullom |
| 305 | Memo dated 11/26/01 from Ullom to Douglas |
| 306 | Compliance Memorandum dated 11/26/02 from Tyler to Ullom (SEC-561 01718 - 01722) |
| 307 | SEC Investigative Subpoena to RJFS and cover letter dated 5/30/02 |
| 308 | Letter dated 1/17/03 from Thyagarajan to Dawn Edick re: Emails |
| 309 | Letter dated 2/10/03 from Thyagarajan to Edick re: RJFS supervisory procedures |
| 310 | Letter dated 2/28/03 from Thyagarajan to Edick re: RJFS supervisory procedures |
| 311 | Letter dated 3/28/03 from Thyagarajan to Edick re: RJFS supervisory procedures |
| 312 | Letter dated 5/22/03 from Jerry Isenberg to David Bergers (Putnam Wells submission) |

| Exhibit | Description |
|---|---|
| 313 | Letter dated 5/27/03 from Michael Unger to David Bergers (RJFS Wells submission) |
| 314 | RJFS Procedures, Submission to the SEC |
| 315 | Excerpts from RJ Required Files, Retention, Manuals & Postings policy summary (RJ SEC 005458 - 005460; 005473) |
| 316 | Excerpt of RJFS Operations Procedures Manual re: Third Party Disbursements (RJ SEC 4331 - 4332) |
| 317 | Excerpt of RJFS Compliance Manual re: Outside Business Activities (RJ SEC 5183 - 5185) |
| 318 | RJFS-IMD Compliance Manual re: hiring/terminating financial advisors (IT Ex. 143) |
| 319 | RJFS Compliance Manual: Supervision of Branch Office Activity (SEC 6620-6644; IT Ex. 206) |
| 320 | IMR and RJFS Compliance Manuals: Supervision of Branch Manager (Herula SEC- 5933 -5935, 6612-6613, IT Ex 214) |
| 321 | Raymond James Financial Services Internal Supervisory Procedures for Securities Division (RJ-SEC 1005-1148) |
| 322 | RJFS - SD Operations Manual (effective June 1999 through July 2000 ) (Herula (SEC)- 7642-7953) |
| 323 | RJFS Operations Procedures (effective as of July 2000) (RJ-SEC 4115-4564) |
| 324 | RJFS - Securities Division/FA Operations Manual (RJ-SEC 3189.1-4061.1) |
| 325 | Raymond James Financial Services Compliance Manual (effective as of 5/19/00) (Herula (SEC) 5962-6670) |
| 326 | RJFS/Compliance - Compliance & Education Quarterly (May 1999 - Volume 7, Number 2 through November 2000 - Volume 8, Number 4) (RJ-SEC 0014-00106) |
| 327 | Compliance Memoranda (RJ-SEC 4615-4655) |
| 328 | RJFS - SD Compliance Sections of Raymond James Digest (RJ-SEC 4659.1-4703, 5008-5048). |
| 329 | Raymond James Digest - Branch Office Supplemental Guide to Communications with the Public (effective as of June 2000) (RJ-SEC 5049-5092) |
| 330 | Internal Procedures, Compliance Department, RJFS Investment Management Division (effective to SD as of 2000) (RJ-SEC 5186-5246) |
| 331 | Training Procedures (effective to SD as of 2000 (RJ-SEC 5247-5305) |
| 332 | NASD Notice to Members 98-83 |
| 333 | NASD Notice to Members 98-11 |
| 334 | NASD Notice to Members 99-03 |
| 335 | NASD Notice to Members 97-19 |
| 336 | NASD Notice to Members 98-38 |
| 337 | NASD Regulatory & Compliance Alert |
| 338 | NASD Notice to Members 99-45 |
| 339 | Web CRD Current Disclosure Summary for RJFS |
| 340 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1231730 |
| 341 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1231698 |
| 342 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1219139 |
| 343 | Web CRD Current Disclosure Summary for Raymond James & Associates |
| 344 | Web CRD Disclosure Occurrence Composite for Raymond James & Associates Occurrence # 32033 |
| 345 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1219139 |
| 346 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1209728 |
| 347 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1207946 |
| 348 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1183037 |
| 349 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1180776 |
| 350 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1135075 |
| 351 | Web CRD Disclosure Occurrence Composite for RJFS Occurrence # 1026210 |
| 352 | Web CRD Disclosure Occurance Composite for RJFS Occurrence # 1094242 |
| 353 | Web CRD Disclosure Occurance Composite for RJFS Occurrence # 1090882 |
| 354 | Web CRD Disclosure Occurance Composite for RJFS Occurrence # 567338 |
| 355 | Web CRD Disclosure Occurance Composite for RJFS Occurrence # 276723 |
| 356 | Web CRD Disclosure Occurance Composite for RJFS Occurrence # 113492 |
| 357 | Web CRD Disclosure Occurance Composite for RJFS Occurrence # 113491 |
| 358 | Web CRD Disclosure Occurance Composite for David Ullom Occurrence # 111972 |
| 359 | Web CRD Disclosure Occurance Composite for David Ullom Occurrence # 111974 |
| 360 | Web CRD Disclosure Occurance Composite for David Ullom Occurrence # 157697 |
| 361 | Letter dated 12/7/99 from Fife to Herula (F 1188) |
| 362 | Fax dated 2/16/00 from Herula to Brite (F 1164; Fife Dep. Ex. 120) |

The Division's Exhibit List dated 12/30/04
*In re Raymond James Financial Services , Inc. File No. 3-11692*

| Exhibit | Description |
|---|---|
| 363 | Fax dated 2/21/00 from Britt to Herula with attached letter dated 2/21/00 from Britt to Clarke (Ex. 155) |
| 364 | Letter dated 2/22/00 from Herula introducing RJFS and Brite business transaction (IT Ex. 152) |
| 365 | Letter dated 2/29/00 from Fife to Herula (F1158) |
| 366 | Letter dated 2/29/00 from Fife to Herula |
| 367 | Letter dated 3/8/00 from Herula to Blackburn (SEC Herula 0087, IT Ex. 211) |
| 368 | Letter dated 3/30/00 from Capalbo to Fife (F 800; IT Ex. 36) |
| 369 | Letter dated 4/5/00 from Herula to FitzHenry (F 787; Ex. 35) |
| 370 | Letter dated 4/6/00 from Herula to Onukwugha (Capital Dynamics) (Ex. 121) |
| 371 | Letter dated 4/10/00 from Capalbo to Raymond James (F 1143; IT Ex. 80; Ex. 158) |
| 372 | Letter dated 5/16/00 to Blackburn (IT Ex. 210) |
| 373 | Letter dated 5/16/00 from Fife to Herula (Ex. 141) |
| 374 | Letter dated 5/22/00 from Herula to Sullivan (F 780; IT Ex. 37) |
| 375 | Letter dated 6/13/00 from Herula to Fife (F 1139) |
| 376 | Letter dated 6/28/00 from Capalbo to Fife (F 1135; IT Ex. 42) |
| 377 | Fax Cover Sheet dated 6/30/00 from Herula to Fife (F 501; Ex. 163) |
| 378 | Fax dated 7/3/00 from Fife to Herula (F 503) |
| 379 | Letter dated 7/4/00 from Herula to Fife (F 1133; IT Ex. 64) |
| 380 | Email dated 7/12/00 from Herula to Blackburn (Ex. 136) |
| 381 | Letter dated 7/15/00 from Herula to Fife (F 764) |
| 382 | Fax dated 8/17/00 from Fife to Herula (SEC 3-095; IT Ex. 63) |
| 383 | Fax dated 8/29/00 from Fife to Herula (F 759) |
| 384 | Letter dated 8/31/00 from Herula to Seaview Development (F 1627; Ex. 166) |
| 385 | Fax dated 9/13/00 from Fife to Herula (F1125) |
| 386 | Fax letter dated 10/6/00 from Fife to Herula (SEC 3-058-059; Ex. 142) |
| 387 | Letter dated 11/9/00 from Herula to Ali Dibooglu with attachments(Ex. 138) |
| 388 | Letter dated 11/9/00 from Herula to Fife, Cohn and Richard Smith (Ex. 137) |
| 389 | Seaview Trican Trust Irrevocable Payment Order dated 12/7/00 in the amount of $10,000,000 (SEC 2-080; IT. Ex. 90) |
| 390 | Letter dated 12/11/00 from Fife and Khan to Capalbo (F 1317-1318; IT Ex. 65) |
| 391 | Fax dated 12/20/00 from Elaine Mountain to Herula (F 1315-1316; IT Ex. 66; Ex. 153) |
| 392 | Letter dated 12/22/00 from Hughes to Capalbo (F 119; IT Ex. 57) |
| 393 | Fax dated 12/28/00 from Fife to Herula (SEC-561 073) |
| 394 | Undated confirmation letter from Herula re: balance sheet enhancement program (IT Ex. 154) |
| 395 | Buy Confirm (SEC-Herula 6204 -6205) (NASD-Herula 0536 -537) |
| 396 | Fax dated 2/16/00 from Fife to Sullivan (F1177-1179; Sullivan Dep. Ex. 122; Fife Dep. Ex. 119; IT Ex. 19) |
| 397 | Brite Business Corporate Resolution Margin Account (F786) |
| 398 | Letter dated 3/31/00 from DiSciasco to Brite/Fife (F 1083) |
| 399 | Letter dated 4/6/00 from DiSciasco to Brite/Fife (F1146) |
| 400 | Letter dated 8/4/00 from DiSciasco to Brite/Fife (F 1131) |
| 401 | Letter dated 9/15/00 from Runkle to Brite/Fife (F 1081) |
| 402 | Letter dated 9/18/00 from Runkle to Brite/Fife (F 1123) |
| 403 | Brite Business Corp. investment portfolio reports 10/5/99 - 9/29/00 (NASD/Herula 297 - 345) |
| 404 | MARS Report dated 11/30/00 (IT Ex. 225) |
| 405 | Fax dated 12/28/00 from Herula to Fife (SEC-561 073) |
| 406 | Letter dated 6/24/02 from Guerra to Bailey |
| 407 | MARS Reports dated 3/31/00, 4/28/00, and 8/31/00 (IT Ex. 226) |
| 408 | MARS Report dated 11/30/00 (IT Ex. 225) |

A-C-5

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

| | |
|---|---|
| **In the Matter of** | |
| **RAYMOND JAMES FINANCIAL SERVICES, INC., J. STEPHEN PUTNAM and DAVID LEE ULLOM,** | Administrative Proceeding File No. 3-11692 |
| **Respondents.** | |

**MEMORANDUM IN SUPPORT OF THE DIVISION'S UNOPPOSED MOTION FOR THE DEPOSITIONS OF RASHED AL BLOUSHI AND MOHAMED HAMED**

Pursuant to Rule 233 of the Commission's Rules of Practice ("Rule 233"), the Division of Enforcement ("Division") hereby submits this memorandum in support of its motion to take the video-taped depositions of Rashed Mohamed Mehran Al Bloushi ("Bloushi") and Mohamed Babouker Hamad ("Hamad") at the U.S. Embassy in London, England, on December 17, 2004, starting at 9:30 a.m. The purpose of the depositions is to preserve the witnesses' testimony for trial. As set forth below, the Division asserts that Bloushi and Hamad will likely give testimony material to the proceeding. As residents of the United Arab Emirates ("UAE"), they will be absent from the United States at the time of the hearing and thus unable to attend or testify at the hearing; however, they have agreed to travel from the UAE to London to make themselves available for the depositions. Because the taking of their depositions will serve the interests of justice, the Division respectfully requests that the Chief ALJ grant its motion. Respondents' counsel have informed Division counsel that they do not object to the motion.

## I. THE RULES OF PRACTICE PROVIDE FOR DEPOSITIONS TO PRESERVE TESTIMONY IN APPROPRIATE CIRCUMSTANCES.

The Rules of Practice provide for depositions where appropriate "to preserve testimony of . . . witness[es] who would be unlikely to be able to attend the hearing." Comment to Rule 233. Rule 233(b) provides that

> [i]n the discretion of the Commission or the hearing officer, an order for a deposition may be issued upon a finding that the prospective witness will likely give testimony material to the proceeding; that it is likely the prospective witness, who is then within the United States, will be unable to attend or testify at the hearing because of . . . absence from the United States, unless it appears that the absence of the witness was procured by the party requesting the deposition; and that the taking of a deposition will serve the interests of justice.

As discussed below, the proposed depositions meet the relevant criteria set forth in Rule 233. As a result, the Division's motion should be granted.[1]

### A. Bloushi and Hamad Will Provide Testimony Material to the Proceeding.

The Division contends that Bloushi and Hamad will give testimony material to this proceeding, in which the Division seeks, *inter alia*, to hold Raymond James liable for the actions of its agent, Dennis Herula ("Herula"). The Division expects that Bloushi will testify that he was one of the persons who invested in the fraudulent scheme executed by Herula and individuals associated with Brite Business. The Division expects that Hamad will testify that at the request of Bloushi, he handled Bloushi's Brite Business investment, including the correspondence relating to that investment, on Bloushi's behalf.

[1] Rule 233(a) provides that the party seeking to take a deposition shall:

> make a written motion setting forth the reasons why such deposition should be taken, including the specific reasons why the party believes the witness will be unable to attend or testify at the hearing; the name and address of the prospective witness; the matters concerning which the prospective witness is expected to be questioned; and the proposed time and place for the taking of the deposition.

The Division addresses each of these elements in its motion and supporting memorandum.

The Order Instituting Proceedings ("OIP") makes specific reference to Bloushi's investment in Brite Business activities, the deposit of his funds at Raymond James, and his communications with Herula. More specifically, the OIP alleges that Bloushi invested $7.5 million with Brite Business in or about June 1999, and that approximately $5 million of this sum was transferred to the Brite Business account at Raymond James in October 1999. OIP, ¶¶ 11, 14, 24. As part of the fraudulent scheme, the OIP alleges that during the period from January 2000 through March 2000, Herula sent several letters to Bloushi, who as of that time, had still not received any of the profits he had been promised on his investment with Brite Business. *Id.*, ¶ 24. The OIP states that in Herula's letters, written on Raymond James letterhead and in his capacity as a representative of Raymond James, Herula attempted to "lull" Bloushi by making various misrepresentations regarding the status of the Brite Business activities in which Bloushi had supposedly invested. *Id.* Finally the OIP alleges that by the end of 2000, Herula misappropriated or otherwise improperly dissipated Bloushi's entire investment. *Id.*, ¶14. The Division intends to question Bloushi and Hamad about the Brite Business investment and their contacts with Raymond James. The Division asserts that in responding to these questions, Bloushi and Hamad will give testimony that is material to the allegations in this matter.

**B. <u>Bloushi and Hamad Will Not Be Able to Attend or Testify at the Hearing.</u>**

Bloushi and Hamad are residents of the UAE.[2] They have represented to Division counsel that they will not be able to attend the hearing in this matter, which would require them to fly approximately 14 hours in order to do so. That said, Bloushi and Hamad have

---

[2] The Division understands that Bloushi and Hamad share the following mailing address: P.O.Box 43858, Abu Dhabi, UAE.

nonetheless agreed to make themselves available for depositions in London.[3] The Division represents that it did not procure the absence of Bloushi and Hamad, who are long-time residents of the UAE. For the foregoing reasons, the Division asserts that Bloushi and Hamad will not be in the United States at the time of the hearing and thus will be unable to attend or testify at the hearing. *Anthony J. Negus*, Admin. Proc. File No. 3-8934, 1996 WL 595702 (Oct. 7, 1996) (providing for foreign deposition even under former rules, which did not expressly list "absence from the United States" as a ground for granting the deposition).

In sum, the Division asserts that Bloushi and Hamad will likely give testimony material to the proceeding and that they will be absent from the United States at the time of the hearing and thus unable to attend or testify at the hearing. Because Bloushi and Hamad have agreed to have their depositions taken for the purpose of preserving their testimony, the taking of their depositions will serve the interests of justice. For these reasons, the Chief ALJ should grant the Division's motion.

### C. The Time, Place, and Deposition Officers for the Depositions

The Division proposes that the deposition of Bloushi commence at 9:30 a.m. on December 17, 2004, and that the deposition of Hamad commence immediately after the conclusion of Bloushi's deposition. Division counsel selected this date after consultation with the prospective witnesses and Respondents' counsel, who notified Division counsel that this date is acceptable to them. Further, at the request of counsel for David Lee

[3] Although Rule 233 appears to address witnesses who are in the United States at the time of the motion and thus subject to the subpoena power of the Administrative Law Judge, there is no need to compel the presence and testimony of Bloushi and Hamad by subpoena. Indeed, the witnesses have voluntarily agreed to fly over 7 hours from the UAE to London to submit to the depositions. Further, Respondents have informed Division counsel that they do not oppose the depositions.

Ullom ("Ullom"), Division counsel will make arrangement to allow Ullom's counsel to participate by telephone.

The Division has arranged for the deposition to be conducted at:

The U.S. Embassy, London
55-56 Upper Brook Street
London W1A 2 LQ
United Kingdom
Telephone: [44] (0)20 7499-9000

The Division proposes that that the Chief ALJ designate two deposition officers, one to administer the necessary oaths and another to transcribe the proceedings. More specifically, the Division proposes that the Chief ALJ designate Mary Daschbach or other Vice Consul of the U.S. Embassy to be the deposition officer for the purpose of administering the oaths before the depositions.[4] See Rule 233(c), (d). Ms. Daschbach and the other Vice Consul of the U.S. Embassy are "authorized to administer oaths by the laws of the United States or of the place where the deposition is to be held." *See* Rule 233(c). In addition, the Division proposes that the Chief ALJ designate Leah Willersdorf or other court reporter affiliated with Harry Counsell & Co., Court Reporters, to be the deposition officer for the purpose of recording and transcribing verbatim the "questions propounded and all answers or objections" and thereafter preparing and certifying the

---

[4] Rule 233(c) states that the order shall designate the deposition officer by name; however, Rule 28 of the Federal Rules of Civil Procedure, which sets forth the criteria for serving as a deposition officer upon which the criteria in Rule 233 are based, states that "[a] notice or commission may designate the person before whom the deposition is to be taken either by name or descriptive title." *See* Comment (c) to Rule 233; Fed. R. Civ. P. 28(b). If the deposition officer is designated by title, the parties will have the flexibility to have another Vice Counsul administer the oaths in the event that Ms. Daschbach is unable to attend due to illness or other obligation. Such flexibility is particularly appropriate here, where counsel and the witnesses will be traveling to complete the depositions and have a heightened interest in doing so as efficiently as possible.

transcript.[5] *See* Rule 233(f). Finally, to enhance the Chief ALJ's ability to assess the witnesses' credibility, the Division has made arrangements to have the depositions videotaped.[6]

## CONCLUSION

For the foregoing reasons, the Division's unopposed motion for the depositions of Bloushi and Hamad should be granted.

Respectfully submitted,

DIVISION OF ENFORCEMENT,
by its attorneys,

Luke T. Cadigan, Senior Trial Counsel
Bradford Ali, Senior Counsel
Dawn Edick, Staff Attorney
Risa King, Staff Attorney
U.S. Securities & Exchange Commission
73 Tremont Street, Suite 600
Boston, MA 02081
(617) 573-8919 (Cadigan)
(617) 424-5940 (Fax)

Dated: November 23, 2004

[5] As with the designation of the deposition officer to administer oaths,, the Division seeks the flexibility to use another court reporter in the event that Ms. Willersdorf is unable to fulfill her duties for whatever reason.

[6] Because Bloushi speaks Arabic but not English, the Division will also arrange to have an interpreter at the deposition to translate his testimony.

# CERTIFICATE OF SERVICE

I hereby certify that, on November 23, 2004, I served copies of the foregoing Memorandum in Support of the Division's Unopposed Motion for the Depositions of Rashed Al Bloushi and Mohamed Hamad to each of the following by fax and overnight courier:

Honorable Brenda P. Murray, Chief Administrative Law Judge
Office of Administrative Law Judges
U.S. Securities and Exchange Commission (Stop 11-6)
450 5th Street, N.W., Room 10400
Washington, D.C. 20549-1106
Fax (202) 942-9655

**Counsel for Respondent Raymond James Financial Services, Inc.**
Burton W. Wiand, Esq.
Maya M. Wolfe, Esq.
Fowler White Boggs Banker
501 East Kennedy Boulevard
Tampa, FL 33602
Fax (813) 229-8313

Lara Thyagarajan, Esq.
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
Fax (617) 439-9556

**Counsel for J. Stephen Putnam**
Jerry A. Isenberg, Esq.
Thomas J. McGonigle, Esq.
LeClair Ryan, A Professional Corporation
1701 Pennsylvania Avenue N.W., Suite 1045
Washington, D.C. 20006
Fax (202) 659-4130

**Counsel for Respondent David Lee Ullom**
Willis H. Riccio, Esq.
Paul Curcio, Esq.
Adler Pollock & Sheehan P.C.
2300 Financial Plaza
Providence, RI 02903
Fax (401) 751-0604

Luke T. Cadigan, Esq.

Rashed [redacted]ohamed Mehran Al [redacted]oushi
P O Box 43858 Abu Dhabi, Tel: +971506428383 Fax: +97126763610 Email: mbhamad@eim.ae

April 9, 2006

U-5

Att: Mr. Luke Cadigan
Att: Mr. Ali, Bradford

File # 311692

**Subject: Objection against the SEC proposed distribution plan for the RJFS funds**

By this I would like to submit to the esteemed SEC my objection against the proposed distribution plan of SEC for the RJFS funds between only two individuals out of those harmed by RJFS and Brite Business jointly and individually including myself..

**Reasons of my objection are:**

1- First of all I would like to state a fact to the esteemed SEC that Mr. Herula of RJFS was an official staff of RJFS acting as their Investment/Financial manager. That fact was proved by RJFS themselves during the proceedings of Brite Business case. He, Mr. Herula, was only terminated by RJFS after the case of Brite Business was filed and became Known to the public and thus after all the commitments given to me by him, Mr. Herula, on behalf of RJFS. Therefore, and since I did not know Mr. Herula or never had met him and until today, I considered all the correspondences received by me from Mr. Herula as an official communications with RJFS. I was not communicating with Mr. Herula on his personal capacity, but as RJFS manager. Simply RJFS as a company means nothing without the staff, and communication with any company is done only with its staff. Therefore all the official (not personal) staff actions are considered to represent the company, and that what exactly happened to me with RJFS.

2- RJFS misrepresented and mislead me when I asked them about Mr. Herula, when he disappeared and stopped communications with me, and the legal department of RJFS responded to me that there is no official with RJFS in that name. At that time the case had started and RJFS were in the mid of investigations by SEC. Then during the course of the proceedings, RJFS confessed that Mr. Herula was one of RJFS managers. RJFS mislead me and tried to keep me away from what was going on. Should RJFS had told me the truth, I should had taken all the necessary legal actions to get my funds transferred back to me at a time the funds were still kept with RJFS.

3- As I mentioned in my deposition, and again I repeat, that the name of RJFS was mentioned to me by Brite Business right from the beginning and that let me check their web site and get confident of the investment program and rely on the belief that I was fully protected by a large financial company RJFS who were managing Brite Business funds including my funds and other's funds. Please check my deposition and Mr. Hamad deposition this respect.

4- My belief that RJFS were behind the deal proved to be correct when that belief was confirmed by the official contact I had got directly from RJFS through their financial manager Mr. Herula who confirmed to me by an official fax letter, on RJFS letterhead, that our funds were under his and RJFS custody and they, Herula and RJFS, were both fully responsible of my funds individually and collectively. Please check the fax messages sent to me by RJFS.

5- It is true that RJFS did not ask me to transfer my funds to Brite Business account opened with them, like what they did with the other investors, but that was simply because my funds were already there deposited with them, RJFS, by Brite Business. Actually my funds, with some other's, enabled Brite Business to open the account with RJFS and thus enabled RJFS, with their, (RJFS), knowledge of the source of funds, to buy the I-Treasury Bills later, as a pre-step, for what they called the leveraging of funds to get the maximum profits for the

investors, including myself, and that what Mr. Herula conveyed to me in his fax messages on behalf of his employer RJFS.

6- RJFS were aware of my full name, my address, (where Mr. Herula sent me the faxes and wrote my full name), my participation in the program, and the amount of funds I had deposited with Brite Business which formed an important part of the funds of Brite Business used by RJFS to buy the I-Treasury Bills, RJFS being aware of all that they did not disclose any violations or risk to me, but on the contrary they encouraged me to continue and keep my funds to get the promised profits of the treasury. They actually betrayed me, harmed me, used me, humiliated me, and misrepresented me. Please check the fax messages of RJFS to me sent through their Investment/Financial manager Mr. Herula which proofs their knowledge and details of my participation on their program..

7- Based onto my funds, being deposited by Brite Business at a RJFS account, RJFS were begging the others to expedite their transfers to complete their portfolio to U$D 100 block as they called it then. That was why RJFS were calling others to send their funds and not calling on me to do the same since they were controlling my funds and they knew I could not had withdrawn the funds without their consent.

8- So, RJFS were not in touch with me at the beginning, not because they did not know me or did not want to misrepresent me or get my funds, but it was simply because my funds were already with them and they used them as an available seeds to attract others. When others delay their transfers to RJFS, then RJFS started calling on me to assure me that my funds were secured and I had to wait for the profits, all that was meant to keep me on the run until they, RJFS, collect more funds from the others, the one's you decided to compensate. I was not only harmed and exploited, but also hooked and humiliated. Don't we consider all that harm?

9- Thus, it looks very strange and unfair to compensate only those two investors who were attracted by my funds, which were kept with RJFS, and not to compensate me who was used as a vehicle to get others. RJFS behavior with me was not only harmful, misrepresentation, and exploitation, but also humiliation and cheating.

10- When RJFS felt that I was serious on calling on them to get my funds back, please check my repeated faxes to them and Brite Business, they, RJFS, started communicating with me to keep the funds until they get the other funds from the new investors. They kept sending me fax messages, Mr. Herula, to keep me in the run and use my funds and my name as a reference to get the others.

11- I would not had stopped asking for my funds to be sent back to me without the firm undertaking from RJFS, Mr. Herula, that my funds were save and under Mr. Herula own responsibility and RJFS responsibility respectively and jointly. Please check his fax messages to me.

12- SEC have catered to create a fair fund to benefit only two investors from those who were harmed by RJFS, this is by itself is not a fair sharing since the other investors had suffered even more than the selected two, who only sent their money at a time I was bleeding to RJFS to send back my funds and they refused to do that. Why did they refuse to send back my funds or even protect me? Can't we call that misrepresentation and harm?

13- If RJFS did not have knowledge right from the beginning about my funds deposited with them by Brite Business, then why they, RJFS, had kept my funds with them and kept asking me to wait and keep my funds with them for more time to get the expected treasury profits. Why shouldn't they, RJFS, advised me that the deal was risky and Brite Business can not fulfill the deal? Why shouldn't they, RJFS, sent back my funds being fully aware of my name, address, and the amount of my participation? Don't all this make them liable and condemned towards such an attitude towards me?

14- Sharing, by all means, should not deprive some investors against others who came to ride the boat late, not because of anything, but because RJFS had used my name as a reference to get them in that drowning boat.

15- If we consider the RJFS deal as a boat which gathered every body, so if the boat drown, should SEC safe only the last riders and leave those who suffered for long, or safe all of them equally if not giving priory to the pioneers who suffered more.
16- Although, in my opinion, I think I was the most harmed person by both RJFS and Brite Business, but still I would at least vote and ask for equality, and in proportionate, between the three investors, the selected two and myself. In my opinion, this will be the least just.
17- RJFS were fully indulged in the business of Brite Business and their clients including myself. RJFS were in full knowledge, details, coordination, collaboration, and financial deals with Brite Business. They were partners and had caused the same harm caused by Brite Business to all the participants of the offered High Yield Program.

By this submission I request the esteemed SEC to revise the proposed plan for the distribution of RJFS funds, even they are little, and consider me as one of the most harmed investors by RJFS.

Looking forward to receive the respected decision of the SEC with my thanks and whole heart full profound respect and appreciation for all the efforts, dedication, and professional lead the respected staff of the SEC have done in this case, with my very best regards and respect to all of you.

(Please accept this email as an official document issued by myself, original signed copy will follow by mail to the Office of the Secretary, United States Securities and Exchange Commission, 100 F Street, NE, Washington, DC 549-1090)

Rashed Mohamed Mehran Al Bloushi
P O Box 43858 Abu Dhabi, U. A. E.
Tel: 00971-50-642 83 83
Fax : 00971-2-676 36 10
Courier address:
Pent House 172, 17th floor,
Bin Ham Blg., Hamdan St.,
Abu Dhabi, United Arab Emirates

<u>Quotes from the SEC proposed distribution plan for RJFS fund:</u>

"Although Herula also made misrepresentations to a third investor, Rashed Al Bloushi ("Al Bloushi"), the Commission found that RJFS could not be held liable for these misrepresentations because Al Bloushi did not rely on them when first making his investment, and it stated that it would "create a Fair Fund to benefit Mr. Fitzhenry and Mr. Monlezun, the investors harmed by the violations."

"The Distribution Plan generally provides for the distribution to Robert Fitzhenry and Malcolm Monlezun, the two individuals that were found to have been harmed by RJFS's securities violations."

**Bulluck, Laura**

X-5

**From:** Cadigan, Luke
**Sent:** Friday, March 31, 2006 4:43 PM
**To:** 'mbhamad'
**Cc:** Ali, Bradford
**Subject:** RE: In re Raymond James

The Raymond James Distribution plan was published today. As I indicated I would, I have attached a copy and would appreciate it if you let me know when you have received it. In addition, a copy of the notice may be found at the following link: http://www.sec.gov/news/digest/dig033106.txt

Please let me know if you or Mr. Bloushi have any questions.

Luke T. Cadigan
Senior Trial Counsel
Securities and Exchange Commission
Boston District Office
33 Arch Street, 23rd Floor
Boston, MA 02110
(Ph) (617) 573-8919
(Fx) (617) 573-4590

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

| | |
|---|---|
| In the Matter of<br><br>RAYMOND JAMES FINANCIAL SERVICES, INC., and J. STEPHEN PUTNAM,<br><br>Respondents. | Administrative Proceeding<br>File No. 3-11692 |

**PROPOSED DISTRIBUTION PLAN**

Pursuant to Rule 1101 of the Securities and Exchange Commission's ("Commission") Rules of Practice, the Division of Enforcement ("Division") hereby submits its proposed plan (the "Plan") for the administration and distribution of funds in the Fair Fund created in this matter.

## I. Background

1. On November 21, 2005, after a hearing in this matter before Chief Administrative Law Judge Brenda P. Murray, the Commission found Respondent Raymond James Financial Services, Inc. ("RJFS") liable for fraud and found RJFS and Respondent J. Stephen Putnam ("Putnam") liable for failure to supervise. The Commission ordered RJFS to pay a penalty of $6,900,000.00, disgorgement of $5,866.25, and prejudgment interest of $1,866.76, for a total of $6,907,733.01. Putnam was ordered to pay a penalty of $200,000.00, but no disgorgement.

2. RJFS satisfied its disgorgement, prejudgment interest and penalty obligations by paying $6,907,733.01 to the Commission on November 22, 2005 for inclusion in a Fair Fund, pursuant to Section 308(a) of the Sarbanes Oxley Act of 2002.[1] The funds, which were initially received by the Commission, have since been transferred to the Department of Treasury's Bureau of Public Debt ("BPD"). Pending distribution, the funds have been invested in short-term Treasury securities.

3. Rule of Practice 1101 requires the Division to submit a proposed plan for the administration and distribution of funds in a Fair Fund. The Division now submits its Plan for distributing the funds to defrauded investors.

## II. <u>Definitions</u>

As used herein, the following definitions shall apply:

1. "RJFS Fair Fund" shall mean the funds that RJFS has paid to the Commission in satisfaction of its disgorgement, prejudgment interest, and penalty obligations, plus the interest and income generated while the funds were held by the Commission or by BPD, less any fees, expenses, reserves, or taxes, if any, incurred in making the distribution.

2. "Claimants" shall mean the specific persons or entities who were harmed by RJFS's securities violations at issue in this matter, *i.e.*, by the fraud committed by RJFS through its registered representative, Dennis Herula ("Herula"), and by RJFS's failure to supervise Herula. The Commission found that Robert Fitzhenry, who invested

[1] Putnam satisfied his penalty obligation by paying $200,000 to the Commission on December 21, 2005. This payment, which included no disgorgement obligation, did not qualify for inclusion in the Fair Fund.

funds through Rheaume Holdings Ltd., and Malcolm Monlezun were the two individuals harmed by RJFS's securities violations.[2]

## III. Receipt of Additional Funds

The Division does not anticipate that other than the initial payment by RJFS there will be any additional funds paid into the RJFS Fair Fund.

## IV. Allocation of the RJFS Fair Fund

1. The funds in the RJFS Fair Fund shall be allocated between the two Claimants on a *pro rata* basis, based upon the ratio of (a) the amount that each investor lost by virtue of RJFS's conduct to (b) the total lost by both of the Claimants.

2. The record at trial showed that Mr. Fitzhenry and Mr. Monlezun lost a combined $10,874,065.70. Of this sum, Mr. Fitzhenry lost $10 million (or 91.96%) and Mr. Monlezun lost $874,065.70 (or 8.04%). The Division proposes that under the foregoing, the Claimants should receive the following distributions from the funds in the RJFS Fair Fund:

   a. Robert Fitzhenry: 91.96%

   b. Malcolm Monlezun: 8.04%

## V. Plan Comment Period

1. The Division shall mail a copy of this Plan to the Claimants within five (5) days of its filing. In addition, the Division shall seek to publish a notice of the Plan (the "Notice") in the SEC Docket and on the SEC Web site. Any person and/or entity

---

[2] Although Herula also made misrepresentations to a third investor, Rashed Al Bloushi ("Al Bloushi"), the Commission found that RJFS could not be held liable for these misrepresentations because Al Bloushi did not rely on them when first making his investment, and it stated that it would "create a Fair Fund to benefit Mr. Fitzhenry and Mr. Monlezun, the investors harmed by the violations."

wishing to comment on or object to this Plan may submit their views, in writing, no later than May 1, 2006:

a. to the Office of the Secretary, United States Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549-1090;

b. by using the Commission's Internet comment form (http://www.sec.gov/litigation/admin.shtml); or

c. by sending an e-mail to rule-comments@sec.gov. Please include File Number 3-11692 on the subject line.

2. The Division requests that after the expiration of the comment period set forth in the foregoing paragraph, the Commission issue an order approving the Distribution Plan, appointing the Fund Administrator, and authorizing the distribution of the RJFS Fair Fund in accordance with the terms of the Plan.

3. If for any reason monies from the RJFS Fair Fund are unclaimed after 60 days of the disbursement of funds to the Claimants, or if checks written by the Commission are returned by the Claimants, those funds shall be distributed to the United States Treasury.

## VI. Appointment and Duties of the Fund Administrator

1. Due to the small number of Claimants, and to insure the maximum payout to these Claimants, the Division proposes that Luke T. Cadigan, a Senior Trial Counsel in the Boston District Office, be appointed as Fund Administrator of the RJFS Fair Fund.

2. The Fund Administrator shall carry out the duties specified by this Plan, including the following:

a. oversee compliance with the terms of the Plan;

b. use reasonable efforts to locate the current addresses of the Claimants and to obtain their tax identification numbers or Social Security numbers, if any;

c. monitor the engagement of Damasco and Associates, who was appointed as the separate tax administrator (the "Tax Administrator") for the RJFS Fair Fund by the Commission on February 23, 2006 pursuant to and in accordance with the Commission's "Omnibus Order Directing the Appointment of Tax Administrator in Administrative Proceedings that Establish Distribution Funds," Rel. No. 34-53279A ("Omnibus Order") dated February 14, 2006;

d. establish a reserve fund for future expenses, if any; and

e. submit the report specified in Paragraph 6 below.

3. In carrying out his duties, the Fund Administrator may be assisted by other Commission staff acting under his supervision.

4. The Tax Administrator shall keep records and bill the RJFS Fair Fund for the services provided to it and for the tax payments made on its behalf. Each bill shall be reviewed by the Fund Administrator. After the Fund Administrator has approved the bill for payment, the Commission will pay the bill using funds from the RJFS Fair Fund. Payment shall come first from any earnings or interest in the RJFS Fair Fund, and second, if necessary, from the principal of the RJFS Fair Fund.

5. Upon approval by the Commission of the distribution of the RJFS Fair Fund, and after all taxes and bills from the Tax Administrator have been paid and any reserve established, the Fund Administrator shall forward to the Commission's Office of Financial Management ("OFM") all the necessary information (including the names,

addresses, Social Security numbers, and taxpayer identification numbers, if any, of the two Claimants) for the payment of the distributions to the Claimants. In addition, the Fund Administrator shall transmit to OFM the amount from the RJFS Fair Fund that each Claimant is to receive. Upon submission of this payment information, the Commission will authorize OFM to distribute the funds to the Claimants.

6. Within 60 days after the distribution of the Fair Fund to the Claimants, the Fund Administrator shall be required to provide to the Commission, for its approval, a Final Accounting that gives an accounting of all monies earned or received and all monies spent in connection with the administration of the Plan, sets forth the distributions and payments made pursuant to the Plan, identifies any Claimants not located, describes the efforts made to locate such Claimants, and describes the Fund Administrator's performance of any other duties set forth herein. At that time, the Fund Administrator will also request the discharge of the Fund Administrator. Unless the Commission orders otherwise, the RJFS Fair Fund will terminate 30 days after the submission of the Fund Administrator's Final Accounting.

7. Other than the report specified in Paragraph 6 above, the Fund Administrator shall not be required to report or account to the Commission.

8. After the termination of the RJFS Fair Fund and the discharge of the Fund Administrator, OFM shall, upon the notification by the Fund Administrator, transfer any money remaining in the RJFS Fair Fund to the United States Treasury.

9. Pursuant to Rule 1105(d) of the Commission's Rules of Practice, 17 C.F.R. § 201.1105(d), the Fund Administrator shall receive no compensation, other than

his regular salary as an employee of the Commission, for his services in administering the RJFS Fair Fund.

10. The Fund Administrator shall be entitled to rely on any orders issued in this proceeding by the Commission, the Secretary by delegated authority, or an Administrative Law Judge, and may not be held liable to any person for any act or omission in the course of administering the RJFS Fair Fund, except upon a finding in this proceeding of willful failure to comply with the terms of the Plan or any orders issued in this proceeding. The Fund Administrator will be deemed to be acting within the scope of his employment with the Commission in administering this Proposed Plan.

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BOSTON DISTRICT OFFICE
33 ARCH STREET, 23RD FLOOR
BOSTON, MA 02110
PHONE: (617) 573-8900
FACSMILE: (617) 573-4590

LUKE T. CADIGAN
TELEPHONE: (617) 573-8919
EMAIL: cadiganl@sec.gov

March 31, 2006

Y-5

**Federal Express**

Mr. Robert Fitzhenry
c/o Mary Pat Cormier, Esq.
Edwards Angell Palmer & Dodge, LLP
101 Federal Street
Boston, MA 02110

Mr. Malcolm Monlezun
4 Benchmark Drive
Boulder, CO 80303

Re: *In re Raymond James Financial Services, Inc.*, File No. 3-11692

Dear Mr. Fitzhenry and Mr. Monlezun:

Enclosed please find a copy of the proposed distribution plan for the above-referenced matter.

Please do not hesitate to call if you have any questions.

Very truly yours,

Luke T. Cadigan
Senior Trial Counsel

Enclosure

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

| | |
|---|---|
| **In the Matter of**<br><br>**RAYMOND JAMES FINANCIAL SERVICES, INC., and J. STEPHEN PUTNAM,**<br><br>**Respondents.** | Administrative Proceeding<br>File No. 3-11692 |

## PROPOSED DISTRIBUTION PLAN

Pursuant to Rule 1101 of the Securities and Exchange Commission's ("Commission") Rules of Practice, the Division of Enforcement ("Division") hereby submits its proposed plan (the "Plan") for the administration and distribution of funds in the Fair Fund created in this matter.

## I. Background

1. On November 21, 2005, after a hearing in this matter before Chief Administrative Law Judge Brenda P. Murray, the Commission found Respondent Raymond James Financial Services, Inc. ("RJFS") liable for fraud and found RJFS and Respondent J. Stephen Putnam ("Putnam") liable for failure to supervise. The Commission ordered RJFS to pay a penalty of $6,900,000.00, disgorgement of $5,866.25, and prejudgment interest of $1,866.76, for a total of $6,907,733.01. Putnam was ordered to pay a penalty of $200,000.00, but no disgorgement.

2. RJFS satisfied its disgorgement, prejudgment interest and penalty obligations by paying $6,907,733.01 to the Commission on November 22, 2005 for inclusion in a Fair Fund, pursuant to Section 308(a) of the Sarbanes Oxley Act of 2002.[1] The funds, which were initially received by the Commission, have since been transferred to the Department of Treasury's Bureau of Public Debt ("BPD"). Pending distribution, the funds have been invested in short-term Treasury securities.

3. Rule of Practice 1101 requires the Division to submit a proposed plan for the administration and distribution of funds in a Fair Fund. The Division now submits its Plan for distributing the funds to defrauded investors.

## II. Definitions

As used herein, the following definitions shall apply:

1. "RJFS Fair Fund" shall mean the funds that RJFS has paid to the Commission in satisfaction of its disgorgement, prejudgment interest, and penalty obligations, plus the interest and income generated while the funds were held by the Commission or by BPD, less any fees, expenses, reserves, or taxes, if any, incurred in making the distribution.

2. "Claimants" shall mean the specific persons or entities who were harmed by RJFS's securities violations at issue in this matter, *i.e.*, by the fraud committed by RJFS through its registered representative, Dennis Herula ("Herula"), and by RJFS's failure to supervise Herula. The Commission found that Robert Fitzhenry, who invested

[1] Putnam satisfied his penalty obligation by paying $200,000 to the Commission on December 21, 2005. This payment, which included no disgorgement obligation, did not qualify for inclusion in the Fair Fund.

funds through Rheaume Holdings Ltd., and Malcolm Monlezun were the two individuals harmed by RJFS's securities violations.[2]

## III. Receipt of Additional Funds

The Division does not anticipate that other than the initial payment by RJFS there will be any additional funds paid into the RJFS Fair Fund.

## IV. Allocation of the RJFS Fair Fund

1. The funds in the RJFS Fair Fund shall be allocated between the two Claimants on a *pro rata* basis, based upon the ratio of (a) the amount that each investor lost by virtue of RJFS's conduct to (b) the total lost by both of the Claimants.

2. The record at trial showed that Mr. Fitzhenry and Mr. Monlezun lost a combined $10,874,065.70. Of this sum, Mr. Fitzhenry lost $10 million (or 91.96%) and Mr. Monlezun lost $874,065.70 (or 8.04%). The Division proposes that under the foregoing, the Claimants should receive the following distributions from the funds in the RJFS Fair Fund:

   a. Robert Fitzhenry: 91.96%

   b. Malcolm Monlezun: 8.04%.

## V. Plan Comment Period

1. The Division shall mail a copy of this Plan to the Claimants within five (5) days of its filing. In addition, the Division shall seek to publish a notice of the Plan (the "Notice") in the SEC Docket and on the SEC Web site. Any person and/or entity

---

[2] Although Herula also made misrepresentations to a third investor, Rashed Al Bloushi ("Al Bloushi"), the Commission found that RJFS could not be held liable for these misrepresentations because Al Bloushi did not rely on them when first making his investment, and it stated that it would "create a Fair Fund to benefit Mr. Fitzhenry and Mr. Monlezun, the investors harmed by the violations."

wishing to comment on or object to this Plan may submit their views, in writing, no later than May 1, 2006:

a. to the Office of the Secretary, United States Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549-1090;

b. by using the Commission's Internet comment form (http://www.sec.gov/litigation/admin.shtml); or

c. by sending an e-mail to rule-comments@sec.gov. Please include File Number 3-11692 on the subject line.

2. The Division requests that after the expiration of the comment period set forth in the foregoing paragraph, the Commission issue an order approving the Distribution Plan, appointing the Fund Administrator, and authorizing the distribution of the RJFS Fair Fund in accordance with the terms of the Plan.

3. If for any reason monies from the RJFS Fair Fund are unclaimed after 60 days of the disbursement of funds to the Claimants, or if checks written by the Commission are returned by the Claimants, those funds shall be distributed to the United States Treasury.

## VI. Appointment and Duties of the Fund Administrator

1. Due to the small number of Claimants, and to insure the maximum payout to these Claimants, the Division proposes that Luke T. Cadigan, a Senior Trial Counsel in the Boston District Office, be appointed as Fund Administrator of the RJFS Fair Fund.

2. The Fund Administrator shall carry out the duties specified by this Plan, including the following:

a. oversee compliance with the terms of the Plan;

b. use reasonable efforts to locate the current addresses of the Claimants and to obtain their tax identification numbers or Social Security numbers, if any;

c. monitor the engagement of Damasco and Associates, who was appointed as the separate tax administrator (the "Tax Administrator") for the RJFS Fair Fund by the Commission on February 23, 2006 pursuant to and in accordance with the Commission's "Omnibus Order Directing the Appointment of Tax Administrator in Administrative Proceedings that Establish Distribution Funds," Rel. No. 34-53279A ("Omnibus Order") dated February 14, 2006;

d. establish a reserve fund for future expenses, if any; and

e. submit the report specified in Paragraph 6 below.

3. In carrying out his duties, the Fund Administrator may be assisted by other Commission staff acting under his supervision.

4. The Tax Administrator shall keep records and bill the RJFS Fair Fund for the services provided to it and for the tax payments made on its behalf. Each bill shall be reviewed by the Fund Administrator. After the Fund Administrator has approved the bill for payment, the Commission will pay the bill using funds from the RJFS Fair Fund. Payment shall come first from any earnings or interest in the RJFS Fair Fund, and second, if necessary, from the principal of the RJFS Fair Fund.

5. Upon approval by the Commission of the distribution of the RJFS Fair Fund, and after all taxes and bills from the Tax Administrator have been paid and any reserve established, the Fund Administrator shall forward to the Commission's Office of Financial Management ("OFM") all the necessary information (including the names,

addresses, Social Security numbers, and taxpayer identification numbers, if any, of the two Claimants) for the payment of the distributions to the Claimants. In addition, the Fund Administrator shall transmit to OFM the amount from the RJFS Fair Fund that each Claimant is to receive. Upon submission of this payment information, the Commission will authorize OFM to distribute the funds to the Claimants.

6. Within 60 days after the distribution of the Fair Fund to the Claimants, the Fund Administrator shall be required to provide to the Commission, for its approval, a Final Accounting that gives an accounting of all monies earned or received and all monies spent in connection with the administration of the Plan, sets forth the distributions and payments made pursuant to the Plan, identifies any Claimants not located, describes the efforts made to locate such Claimants, and describes the Fund Administrator's performance of any other duties set forth herein. At that time, the Fund Administrator will also request the discharge of the Fund Administrator. Unless the Commission orders otherwise, the RJFS Fair Fund will terminate 30 days after the submission of the Fund Administrator's Final Accounting.

7. Other than the report specified in Paragraph 6 above, the Fund Administrator shall not be required to report or account to the Commission.

8. After the termination of the RJFS Fair Fund and the discharge of the Fund Administrator, OFM shall, upon the notification by the Fund Administrator, transfer any money remaining in the RJFS Fair Fund to the United States Treasury.

9. Pursuant to Rule 1105(d) of the Commission's Rules of Practice, 17 C.F.R. § 201.1105(d), the Fund Administrator shall receive no compensation, other than

his regular salary as an employee of the Commission, for his services in administering the RJFS Fair Fund.

10. The Fund Administrator shall be entitled to rely on any orders issued in this proceeding by the Commission, the Secretary by delegated authority, or an Administrative Law Judge, and may not be held liable to any person for any act or omission in the course of administering the RJFS Fair Fund, except upon a finding in this proceeding of willful failure to comply with the terms of the Plan or any orders issued in this proceeding. The Fund Administrator will be deemed to be acting within the scope of his employment with the Commission in administering this Proposed Plan.

RECEIVED

NOV 25 2005

SECURITIES AND EXCHANGE COMMISSION
BOSTON DISTRICT OFFICE

8-5

November 22, 2005

Office of Financial Management
Securities & Exchange Commission
Operations Center
6432 General Green Way, Stop 0-3
Alexandria, VA 22312

**RE: RAYMOND JAMES FINANCIAL SERVICES, INC.
ADMINISTRATIVE PROCEEDING FILE NO. 3-11692**

Ladies/Gentlemen:

Pursuant to the Order of Chief Administrative Law Judge Brenda L. Murray, I enclose a bank cashier's check in the amount of $6,907,733.01 payable to the U.S. Securities & Exchange Commission on behalf of Raymond James Financial, Inc.

Very truly yours,

Barry Augenbraun

Barry Augenbraun
Senior Vice President

BA:dh

Enclosure

Cc w/enclosure: Luke T. Cadigan, Division of Enforcement, SEC Boston
Ian D. Roffman, Division of Enforcement, SEC Boston
Bradford E. Ali, Division of Enforcement, SEC Boston
Dawn A. Edick, Division of Enforcement, SEC Boston
Burt Wiand, Esquire

RAYMOND JAMES
FINANCIAL, INC.
The Raymond James Financial Center 880 Carillon Parkway P.O. Box 12749
St. Petersburg, FL 33733-2749 (727) 573-3800 http://www.rjf.com

**Bank of America.**

**Cashier's Check**

No. **4398289**

Date [illegible]

[illegible] OFFICE

[illegible] [illegible] 004398289

RAYMOND JAMES FINANCIAL SERVICES, INC.

Remitter (Purchased By)

Pay **SIX MILLION NINE HUNDRED SEVEN THOUSAND SEVEN HUNDRED THIRTY THREE DOLLARS AND 01 CENTS** $ **6907733.01**

To The Order Of **U.S. SECURITIES AND EXCHANGE COMMISSION**

****

Michael P. [illegible]

Authorized Signature

Bank of America, N.A.
San Antonio, Texas

⑈4398289⑈ ⑆114000019⑆ 00164100205⑈

**Cadigan, Luke**

**From:** mbhamad [mbhamad@emirates.net.ae]
**Sent:** Friday, September 16, 2005 3:03 AM
**To:** Cadigan, Luke
**Subject:** Re: RJFS

AA-5

Thanks for the clarification, I did not read the text yet, and I will appreciate feed back on the penalties on the others and their ability to pay. Of course Rashed and the others were in the same boat and Brite had used all the funds from all with RJ and thus Herula. I hope there is a strong room for an appeal to include Rashed equally with other without any discrimination or differential, with best regards.

----- Original Message -----
From: "Cadigan, Luke" <CADIGANL@SEC.gov>
To: <mbhamad@emirates.net.ae>
Sent: Friday, September 16, 2005 4:05 AM
Subject: RJFS

> I have only now been able to read through the decision completely and
> in case you have not read it yet, I am sorry to be the one to inform
> you that the judge ruled that Mr. Bloushi was not entitled to recovery
> from RJFS because he did not rely on herula in first making his
> investment. In the decision, she says (unexpectedly) that she will
> create the fund herself,
but
> only for the other two investors. I will read the decision more
carefully,
> and depending on whether there's an appeal, things could change.
> However, in the meantime, I wanted to alert you to this unfortunate
> portion of the decision as soon as it came to my attention.
>
>